Dr. Gerald E. McCABE, Plaintiff,

v.

George T. CALEEL, et al., Defendants.

No. 89 C 9411.

United States District Court,
N.D. Illinois, E.D.

April 30, 1990.

---

Gerald E. McCabe, pro se.

Gary M. Griffin, Atty. Gen. of Illinois, for defendants.

**388**

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Gerald McCabe ("McCabe") has filed a pro se action under 42 U.S.C. § 1983 ("Section 1983"), complaining of the revocation of his license to practice medicine more than a decade ago by the Illinois Medical Disciplinary Board ("Board"). McCabe has named a host of defendants—persons who were individual members of Board when the challenged license revocation hearings were held, officials of the Illinois Department of Registration and Education ("Department")[1] during the same period, former Governor Dan Walker, two then lawyers for Department and three nonindividual defendants: Board and Department and the State of Illinois itself. All of McCabe's claims (at least to the extent they are arguably assertable under Section 1983) focus on his charge that Board was illegally constituted because it did not comply with this requirement of then-existing Ill.Rev.Stat. ch. 111, ¶ 4435 (emphasis added):

> There is hereby created the Illinois State Medical Disciplinary Board (hereinafter referred to as the "Board"). The Board shall consist of 7 members, to be appointed by the Governor by and with the advice and consent of the Senate. All shall be residents of the State, *not more than 4 of whom shall be members of the same political party.*

This Court has issued some earlier orders in an effort to get McCabe's sprawling presentations into some kind of manageable shape,[2] and McCabe has sought to do that to some extent. At this point the Illinois Attorney General has filed a motion for dismissal under Fed.R.Civ.P. ("Rule") 12(b)(6) on behalf of all defendants other than former Governor Walker. McCabe

has filed a voluminous response, addressing only part of the issues raised by the motion and also speaking to a good many matters that bear on the merits of the license revocation (an issue really not before this Court in those terms). For the reasons stated in this memorandum opinion and order, this Court:

1. grants the dismissal motion of all the moving defendants;

2. sua sponte dismisses former Governor Walker as well; and

3. because the defects identified in this opinion are incurable, dismisses not only McCabe's Complaint but this action itself.

Defendants advance a number of grounds for rejection of McCabe's claims, including one that at least superficially would seem most likely to kill this lawsuit: the argument that such a stale claim is barred by limitations (see *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276, 277 (7th Cir.1989) (per curiam), confirming the applicability of the two-year statute of limitations [Ill.Rev.Stat. ch. 110, ¶ 13–202] to all Illinois-based Section 1983 claims). McCabe responds to that argument with a contention that he was the victim of fraudulent concealment by one or more defendants, thus triggering the limitations-tolling provision of Ill.Rev.Stat. ch. 110, ¶ 13–215 ("Section 13–215").

Even on that score McCabe cannot succeed, given the discovery rule established by Illinois case law that limits the availability of such statutory tolling where a plaintiff could with due diligence have discovered the asserted fraud in reasonable time to permit a timely filing.[3] This area of analysis will be elaborated on later in this opinion when it treats with the only potential

---

**1.** Department's name has since been changed to Illinois Department of Professional Regulation.

**2.** Purely as a background informational matter, a copy of this Court's February 26, 1990 memorandum opinion and order is attached to this opinion.

**3.** Section 13–215 speaks literally in terms of *actual* discovery: "after the person entitled to bring the same *discovers* that he or she has such

cause of action...." Nevertheless the judicial gloss on the statute makes tolling unavailable in situations of *potential* discovery as well. There are a host of Illinois cases so holding. This opinion chooses only two of the numerous recent cases as exemplary of the proposition stated in the text: *Jordan v. Lind*, 176 Ill.App.3d 530, 537–38, 126 Ill.Dec. 35, 531 N.E.2d 168, 173 (3d Dist.1988) and *Blonder v. Watts*, 166 Ill.App.3d 633, 635, 117 Ill.Dec. 85, 520 N.E.2d 75, 77 (2d Dist.1988).

claim by McCabe that is not independently vulnerable for other reasons—indeed, a claim that is not even assertable against any of the present defendants. In the meantime this Court turns to an exposition of why the Complaint must fail as to all the presently named defendants in any event.[4]

■ In principal part McCabe seeks a massive award of damages—"actual damages" of $5 million plus "special damages" of $5 million plus $5 million in "damages from each individual member of the Board ... for their misdeeds because of their illegal actions" plus $25 million in "punitive damages and/or exemplory [sic] damages." But as a matter of law those claims cannot survive against any of the defendants. As for the *individual* moving defendants, McCabe must succumb to those defendants' assertion of a qualified immunity defense to his lawsuit. For that purpose the standard is whether defendants' conduct violated "clearly established" rights that would have been known to a reasonable state defendant (*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982))—and where the gravamen of the action must by definition depend on a violation of federal constitutional rights, the question is not whether there was a "clearly established" violation of *state* law but rather whether (in terms of this case) the asserted violation of a state statute also implicated a "clearly established" violation of the *federal Constitution.* As *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975) (emphasis added) articulated the objective branch of the standard (the one that still survives after *Harlow* ), the public official:

> is not immune from liability for damages under § 1983 if he knew or reasonably

should have known that the action he took within his sphere of official responsibility would violate the *constitutional rights* of the [person] affected.

Two aspects of the qualified immunity concept as it applies in this context are important in the evaluation of McCabe's claims. One is the often-repeated proposition stated (again) by our Court of Appeals in *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.1989) (citations omitted):

> It is by now well-established that in order to demonstrate a property interest worthy of protection under the fourteenth amendment's due process clause, a party may not simply rely upon the procedural guarantees of state law or local ordinance.

And the other has been fleshed out post-*Harlow* in *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (citations and footnote omitted):

> Somewhat more concretely, whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken....
>
> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any

---

4. Defendants Mem. 5–6 also urges that McCabe is really complaining about violations of *state* law rather than federal rights, violations for which Section 1983 does not provide a remedy (see, e.g., *Archie v. City of Racine,* 847 F.2d 1211, 1216–17 (7th Cir.1988), applying *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984)). But reading McCabe's Complaint most charitably, there might perhaps be room for the idea that Board's failure to meet the standard of

Ill.Rev.Stat. ch. 111, ¶ 4435 could have amounted to a deprivation of McCabe's right to a fair hearing and hence a Due Process Clause violation (but see such cases as *Jafree v. Barber,* 689 F.2d 640, 643 (7th Cir.1982) (per curiam), stating the well-established proposition that a plaintiff must set out "particularized facts" rather than merely conclusory assertions that a constitutional violation has taken place). This opinion need not explore that issue either, for the reasons next discussed in the text.

other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Those principles in combination inevitably doom McCabe's Section 1983 damage claims against the individual moving defendants. Application of the qualified immunity concept to McCabe's situation is simple: It has not been "clearly established" even now, let alone when Board's members acted back in the late 1970s, that the fact (if it is a fact) of Board's political complexion having breached the Illinois statute on which he relies caused any hearings conducted by that Board to be flawed in due process terms.

5. See Appendix.

McCabe's damage claims fail as to all the other defendants as well. As for the State of Illinois and Board and Department as entities, *Will v. Michigan Department of State Police*, —— U.S. ——, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) establishes that none of them is a "person" liable to suit under Section 1983, so they may not be mulcted in damages either. Finally, the same principles that have granted qualified immunity (at a minimum) to the other individual defendants surely apply with at least equal force to insulate ex-Governor Walker from a damages action under Section 1983.

In addition to McCabe's unsustainable damage claims, he also asks for mandatory injunctive relief—for the restoration of his medical license to its pre-revocation status. Where prospective injunctive relief is at issue, qualified immunity is not a defense to a suit brought against a state official in his or her *official* capacity (*Akins v. Board of Governors of State Colleges and Universities*, 840 F.2d 1371, 1377–78 (7th Cir.1988)). But that carries with it the corollary that all the presently-named defendants (persons who are no longer in office and are thus in no position to afford McCabe the restoration remedy he seeks) must be dismissed.[5] As *Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir.1987) (quoted in *Akins*) put it:

> As a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party.

As for the State of Illinois and its agencies, it has already been said that *Will* defines the potential defendants in Section 1983 cases (the "persons" that are suable under that statute) to exclude all such entities. That means they cannot be named as direct defendants in McCabe's effort to obtain injunctive relief either. And finally, to

the extent that McCabe might seek to name as new defendants any *present* state officials who are suable in their official capacities and might now be capable of granting such prospective injunctive relief if McCabe proved his entitlement to it (see *Will*, 109 S.Ct. at 2311 n. 10, reconfirming the viability of Section 1983 claims for such purposes),[6] McCabe would certainly be out of time under *Kalimara* in now attempting to sue those officials.

That last-stated proposition requires some elaboration. As already explained, McCabe tries to escape the consequences of his late filing under the two-year statute of limitations by claiming fraudulent concealment on the part of the former-Board-member defendants. But given the previously-explained judicial overlay of a discovery rule on Section 13–215, no such escape is available to McCabe.

Here he has claimed from Day One—the very time of the now-challenged hearings—that Board was illegally constituted in the very way that he now seeks to make the predicate for his lawsuit. According to McCabe's allegations, the then Board members denied such illegality, but he persisted—indeed he pursued the issue for years. It is not at all that McCabe was unaware that he could make such a claim—instead he complains that he got the goods on the

Board members only within the past two years because the Illinois Freedom of Information Act ("Illinois FOIA," Ill.Rev. Stat. ch. 116, ¶¶ 201–211) did not give him a right to seek access to the relevant records until recently.[7] But what McCabe's "Supplemental Submission to Memorandum Opinion and Order" (received here February 22, 1990) reflects is that his original FOIA requests were directed to the claimed merits of his licensing situation—information about the prescriptions he had written. Only *after* that, *not until 1987*, did he "start[ ] his quest to discover if the BOARD was legally formed as they insisted" (Supp.Subm'n at 5). And it was even later (in 1989), after his further extensive pursuit of the prescription information issue, that McCabe "then doubled his efforts to discover if the BOARD was legally composed" (*id.* at 7).

Thus McCabe argues that his lawsuit is timely because it was only in September 1989 (three months before filing suit) that he "obtained the last certified documents which proved the BOARD was illegal" (*id.* at 7). But his own scenario reflects that had he been reasonably diligent in pursuing the issue—even on the pro-McCabe assumption that only the enactment of Illinois FOIA[8] made that feasible[9]—would

---

6. Paragraph 3 of the prayer in McCabe's self-prepared Complaint asks that he be allowed to amend the Complaint by giving him "the right to add Defendants and to change the injunctive relief to instantly restore" McCabe's license. As a nonlawyer McCabe is clearly unaware of the "one free bite" provision of Rule 15(a), under which any plaintiff has an absolute right without seeking leave of court to amend the complaint before defendants have filed a responsive pleading. Thus McCabe has always been free to name the correct defendants for his injunctive relief claim. In a sense what he has asked might be viewed as a request for an advisory opinion, lacking the "case or controversy" attributes that Article III demands as a precondition to federal jurisdiction—after all, he has neither named nor identified such putative defendants. But because the same analysis that would bar suit against those prospective defendants also provides an alternative ground for dismissal of all the present defendants, this opinion will go on to discuss the limitations issue.

7. Again it should be stressed that this Court expresses no view on the substance of that claim—or on any even arguable causal nexus, in due process terms, between the asserted political imbalance and the hearing that resulted in McCabe's license revocation.

8. McCabe refers to that having happened in 1985. In fact, Illinois FOIA took effect July 1, 1984.

9. There is a real question whether someone in McCabe's position—keenly aware from the very beginning of the claim he now advances, but simply lacking the evidence to prove it—can even claim the benefits of the fraudulent concealment tolling provision in light of the discovery rule. As Illinois courts apply the "should have known" branch of discovery rules, knowledge that there is a prospective cause of action is enough to start the limitations clock running even though the plaintiff is not then in the possession of full information to prove his or her case (see, e.g., *Witherell v. Weimer*, 85 Ill.2d 146, 156, 52 Ill.Dec. 6, 421 N.E.2d 869, 874 (1981)).

have put McCabe into position to advance the present claim far more than two years before he actually filed suit in December 1989.

In summary, even as to any unnamed defendants—persons against whom McCabe might otherwise attempt to obtain the injunctive relief he claims available to him—limitations preclude any such claim. This final door, though it has not even been effectively opened by McCabe's identification of the proper defendants, would be sealed shut in any case.

### Conclusion

McCabe's current claims, reflecting his long-held grievance at having lost his medical license some dozen years back, can be asserted in this federal court only through the vehicle of Section 1983. But to do so McCabe must first somehow avoid the numerous insurmountable roadblocks to such an action that have been dealt with in this opinion. There is no way in which he can cure the flaws identified here, and this Court accordingly dismisses not only his Complaint but this action itself with prejudice.

### APPENDIX

Because the defendants who were Board members at the time McCabe's license was revoked are insulated against liability for damages on qualified immunity grounds and are not susceptible to any official-capacity claim for injunctive relief either, this Court need not decide another issue advanced by those defendants: their claimed *absolute* immunity from suit. But this Court is constrained to observe that there is a great deal of force to defendants' argument that both Board and Department, acting as they did vis-a-vis McCabe and his right to practice medicine, engaged in conduct that was quasi-judicial in nature within the meaning of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). If that is so, *Butz* also establishes a shield of absolute immunity, compelling dismissal of any Section 1983 claim such as

McCabe's against those defendants. Though defendants have offered no real authority on the subject, this Court's independent research has disclosed two decisions from the same Court of Appeals holding precisely that in a context much like the present one: *Horwitz v. State Board of Medical Examiners of the State of Colorado*, 822 F.2d 1508, 1512–16 (10th Cir.1987) (an extended, thoughtful and persuasive analysis of the issues involved) and *Vakas v. Rodriquez*, 728 F.2d 1293, 1296–97 (10th Cir.1984) (an earlier decision simply announcing the identical proposition without much discussion).

It is true that there may be room for argument on the subject. This Court has also independently located the decision in *Manion v. Michigan Board of Medicine*, 765 F.2d 590, 592–96 (6th Cir.1985), which dealt with a similar (though not identical) type of claim and rejected the mantle of absolute immunity in *Butz* terms after "having weighed considerations of public policy, and applied those considerations to the actual functions of the Board" (*id.* at 596).

This Court finds *Horwitz* more persuasive than *Manion* in applying the principles enunciated in *Butz* to McCabe's claims. But as the body of this opinion has demonstrated, it is unnecessary even to reach that question. Even were McCabe able to surmount the absolute immunity hurdle, he must still lose as to the defendants who can successfully claim qualified immunity for the reasons already discussed.

### MEMORANDUM OPINION AND ORDER

On December 21, 1989 Dr. Gerald McCabe ("Dr. McCabe") filed a pro se action under 42 U.S.C. § 1983 ("Section 1983") to complain of the mid–1970s revocation of his license to practice medicine—a revocation imposed by the Illinois Medical Disciplinary Board ("Board"). Based on its initial review of the Complaint (triggered in every case by the need to ferret out possible jurisdictional problems),[1] on January 3,

---

1. As in a number of other respects, Dr.

McCabe's most recent submission reflects a total

1990 this Court issued a sua sponte memorandum opinion and order (the "Opinion") directing Dr. McCabe to address some threshold problems that were evident on the face of the Complaint.

After Dr. McCabe then asked for an extension of time to respond to the directive in the Opinion, this Court issued a January 19 memorandum order granting an additional month for that purpose. Now Dr. McCabe has timely filed a bulky Supplemental Submission—26 pages (numbered 1 through 10 and then 1A through 16A) plus an inch-thick stack of exhibits, the major part of which relate to the substance of his grievance against Board and its members and are therefore entirely off-point in terms of what this Court had requested.[2] Dr. McCabe's current submission is an amalgam of legal lectures addressed to this Court, some extended discussion triggered by Dr. McCabe's inability or unwillingness to read the Opinion properly,[3] his reassertion and elaboration of the charges against the defendants and—fortunately—at least some discussion that is responsive to the Opinion.

There seems no point in further efforts to get this litigation into better focus, as the Opinion had hoped to do. This Court will simply await the responsive pleading by those defendants who have been served and have appeared.

---

misunderstanding of the Opinion's footnote 2. Jurisdictional concerns are what trigger this Court's initial review of complaints, but that review often also discloses nonjurisdictional considerations that deserve an early focus as well. In this instance the Opinion directed Dr. McCabe's attention to one jurisdictional and one nonjurisdictional issue.

**2.** This Court has neither formed nor expressed any view on that underlying grievance. It must of course be assumed at the threshold stage of this litigation that Dr. McCabe's objections to the license revocation itself are meritorious.

**3.** Dr. McCabe several times makes the wholly inaccurate (and offensive) assertion that the Opinion had "politicized" this case. Any reader not consumed by the grievance that fuels his Complaint (as Dr. McCabe clearly is) could never misread footnote 5 to the Opinion in that way.