Robin AKINS, et al., Plaintiffs–Appellants,

v.

BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES, et al., Defendants–Appellees.

No. 87–1961.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1987.

Decided March 4, 1988.

As Amended March 15, 1988.

Rehearing Denied April 11, 1988.

James B. Dykehouse, Poltrock & Giampetro, Chicago, Ill., for plaintiffs-appellants.

Mark T. Dunn, Dunn Goebel Ulbrich Morel & Hundman, Bloomington, Ill., for defendants-appellees.

Before BAUER, Chief Judge, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Robin Akins and nine other former nursing students [1] at the Chicago State Univer-

---

1. The notice of appeal filed in this case lists the appellants in the caption as "ROBIN AKINS, et. al." However, the text continues: "Notice is hereby given that ROBIN AKINS, the plaintiff named above, hereby appeals...." R. 30 at 1. The defendants note that Fed.R.App.P. 3(c) requires that the "notice of appeal shall specify the party *or parties* taking the appeal...." (emphasis supplied). This circuit has held that "notices of appeal are entitled to a liberal construction where the intent of the appellant is apparent and the adverse party is not prejudiced." *Scherer v. Kelley*, 584 F.2d 170, 174 (7th Cir. 1978), *cert. denied*, 440 U.S. 964, 99 S.Ct. 1511,

sity College of Nursing appeal the district court's decision to dismiss their complaint in its entirety. The appellants filed a two-count complaint in the United States District Court for the Northern District of Illinois. In count I of the complaint, the appellants alleged that the appellees, the Board of Governors and several Chicago State University officials, violated their substantive due process rights by terminating their nursing school education pursuant to an arbitrary and capricious academic policy. Count II of the complaint alleged a pendent state law claim for willful and wanton tortious conduct. The appellants sought both injunctive relief and monetary damages. The district court referred the case to a magistrate for her recommendations. Upon receipt of the magistrate's recommendations, the district court dismissed the complaint. It held that the suit was barred in part by the eleventh amendment and in part by the defense of qualified immunity. We affirm in part and reverse in part.

## I

### Background

In their complaint, the appellants, all senior nursing students at Chicago State University, allege that they were enrolled in the clinical nursing practice course number 332, "Nursing VII, Advanced Medical Surgical Nursing," during the fall semester of the 1984–85 academic year. The complaint alleges that the plaintiffs were deprived of their constitutionally protected right to due process in pursuit of their professional education in nursing by the following acts of the administrators and faculty of the University:

a. administering a final examination on December 17, 1984, which defendants knew to be invalid in that it did not fairly evaluate students with respect to the ma-

terial actually presented in the course during the semester;

b. manipulating final exam questions and scores after the aforementioned final examination had been administered to Plaintiffs and others;

c. basing evaluations of Plaintiffs' academic performance on factors not reasonably considered to be academic criteria;

d. intentionally and knowingly falsifying Plaintiffs' clinical evaluations; and

e. manipulating and altering quiz and examination grades throughout the fall trimester.

Complaint at 2–3; R.1 at 2–3. The complaint further alleges that these actions were undertaken as part of a policy to reduce the number of nursing school graduates. The alleged motivation behind this policy was the school's difficulty with the Illinois Department of Registration and Education due to the poor success rate of the school's graduates on the Illinois State licensing examinations.

In their complaint, the appellants claimed that, as a result of this policy, their reputations were injured, their ability to obtain professional employment was hindered, they were deprived of their interest in continuing their professional education, and they were caused humiliation, embarrassment and mental anguish. They sought temporary and permanent injunctive relief, including reinstatement in the nursing program. They also sought compensatory and punitive damages. In a pendent claim, they sought the same relief under state law.

The appellees responded by filing with the district court a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim upon which relief can be granted. The court then referred the matter to a magistrate. On December 2, 1986, the

59 L.Ed.2d 778 (1979). While we think the question is a close one and the practice followed here is not to be repeated, we believe this notice was marginally adequate. Throughout the litigation in the district court, the plaintiffs had been represented by the same attorney and had presented precisely the same contentions. The facts and law applying to each were the same.

Moreover, the defendants make no representation of surprise or prejudice. *See Ayres v. Sears, Roebuck & Co.,* 789 F.2d 1173, 1177 (5th Cir. 1986); *see also Brubaker v. Board of Educ.,* 502 F.2d 973, 983 n. 4 (7th Cir.1974), *cert. denied,* 421 U.S. 965, 95 S.Ct. 1953, 44 L.Ed.2d 451 (1975).

magistrate entered a report and recommendation regarding the appellees' motion to dismiss.

## II

### The Magistrate's Report and Recommendation

#### A. *Eleventh Amendment*

The magistrate first turned to the question of whether any aspect of the complaint was barred by the eleventh amendment.

#### 1. The Board of Governors

The magistrate first determined that the Board of Governors, like the Illinois Board of Regents, is not an independent governmental subdivision but an arm of the state. Accordingly, the magistrate recommended that the Board of Governors be dismissed from the case.

#### 2. Individual Defendants

The magistrate then turned to the individual defendants. She first noted that the complaint did not make it clear whether the individual defendants were sued in their official capacities, in their individual capacities, or both. The complaint merely listed the positions held by each defendant at Chicago State University and alleged that they acted under color of state law. While acknowledging that naming a defendant's position has been held to raise a presumption that the official is sued only in his official capacity, the magistrate also noted that the presumption is not conclusive. Because the plaintiffs had stated in their memorandum in opposition to the motion to dismiss that they were also proceeding against the defendants as individuals, the magistrate concluded that, absent objection by the plaintiffs, she would assume that the defendants were sued both in their official and individual capacities.

#### a. Official Capacity

The magistrate then turned to whether the individual defendants could be sued in their official capacities without violating the eleventh amendment. With respect to monetary relief, she determined that no judgment could be imposed on this basis. She reasoned that an action against an officer in his official capacity is an action against the entity of which he is an officer and that a monetary judgment entered against an officer in that capacity imposes liability on the entity he represents. With respect to the pendent state law claim, she concluded that the eleventh amendment prohibits not only suits for monetary damages but also for injunctive relief.

#### b. Individual Capacity

With respect to the suit against the individual defendants in their individual capacities, the magistrate determined that the individual official, and not the state, was the real and substantial party at interest. Accordingly, the plaintiffs' action against the defendants in their individual capacities —either with respect to injunctive or monetary relief—was not barred by the eleventh amendment.

#### B. *The Cause of Action and Qualified Immunity*

The magistrate determined that the complaint stated a cause of action for a violation of substantive due process of law. In her view, under Illinois law, a college or university has a contractual relationship with its students that amounts to a property right in their continued education. Although the college of nursing student handbook does not expressly state that students will be graded and evaluated fairly, it does provide procedures by which students may appeal grades they think are unfair. Such provisions constitute, concluded the magistrate, an implied promise that grading will not be arbitrary.

On the matter of immunity, the magistrate determined that the case law at that time did not clearly establish the substantive due process right to be free from arbitrary and capricious action on the part of university officials with respect to academic decisions. Accordingly, she recommended that, with respect to count I, the individual defendants in their individual capacities were entitled to qualified immunity.

## C. *Summary*

The magistrate summarized her recommendations as follows:

(1) The Board of Governors should be dismissed from the action;

(2) Count I (the federal claim alleging a violation of due process) should be dismissed "to the extent that it seeks monetary damages from the individual defendants in their official capacities and against the individual defendants in their individual capacities." *Akins v. Board of Governors,* No. 85 C 5948, magistrate's report and recommendation at 14–15 (N.D.Ill. Dec. 2, 1986) [hereinafter Magistrate's report]; R.23 at 14–15.

(3) Count II (pendent state claim) should be dismissed as to the individual defendants in their official capacities.

Therefore, although the magistrate did not explicitly state which claims ought to survive, it appears that she recommended that only two claims survive. The claims are the count I allegations against the individual defendants in their official capacities to the extent that the appellants request injunctive relief, and the count II state law allegations against the individual appellees in their individual capacities.

## III

### The District Court's Judgment

In a terse docket entry, the district court noted that "the court accepts and adopts the report and recommendation of the magistrate with the clarification noted on the reverse of this order and hereby grants the defendants' motion to dismiss the complaint." *Akins v. Board of Governors,* No. 85 C 5948, docket entry at 1 (N.D.Ill. May 13, 1987) [hereinafter Docket entry]; R.27 at 1. The one-page "clarification," which the district court captioned an "order," amounts to a substantial revision of the magistrate's report and recommendation. For the sake of clarity, we shall set forth the district court's holding according to the organizational scheme utilized by the magistrate.

## A. *Eleventh Amendment*

### 1. The Board of Governors

The court noted that the plaintiffs did not object to the dismissal of this party on eleventh amendment grounds.

### 2. Individual Defendants
#### a. Official Capacity

The district court further noted that the plaintiffs did not object to the dismissal of count I against the individual defendants in their official capacities to the extent that the plaintiffs sought monetary relief; nor did they object to the dismissal of count II as to the individual defendants in their official capacities. It then noted that the plaintiffs, in their objections to the report of the magistrate, had claimed that "they are suing the defendant state officials in their individual capacities and not in their official capacities." *Akins v. Board of Governors,* No. 85 C 5948, order at 1 (N.D. Ill. May 13, 1987) (quoting "Plaintiffs' Objections" at 2) [hereinafter Order]; R.27 at 2. The district court therefore held that there was no outstanding request for injunctive relief against the defendants in their official capacities.

#### b. Individual Capacity

The district court did not explicitly address this issue.

## B. *The Cause of Action and Qualified Immunity*

Unlike the magistrate, the district court did not address explicitly whether the complaint stated a cause of action. Rather, it held that *both* claims for injunctive and declaratory relief are barred by the doctrine of qualified immunity. Because, as noted *supra,* the district court believed that the plaintiffs were suing the defendants only in their individual capacities, this analysis of the immunity issue was apparently limited to the "individual capacity" aspect of the case. In the district court's view, the holding of the Supreme Court in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), requires such a result. "Immunity from damages claims

but not from claims for injunctive relief would make little sense; the individual defendants would still have to stand trial, and successors would not be bound by any injunction entered against individual defendants." Order at 1.

## C. *Summary*

The district court therefore dismissed all of count I (federal due process claim) and then, in the exercise of its discretion, dismissed count II (state claims).

## IV

## Discussion

This case comes before us in, to put it mildly, an amorphous condition. An ambiguous complaint led to an ambiguous magistrate's report that in turn resulted in an ambiguous order by the district court.[2] Under these circumstances, our primary duty is to clear away the underbrush and focus the parties and the district court on the issues that remain. If the case returns here, it will, we hope, be in a somewhat more organized condition.[3]

As the case reaches us, it presents two basic issues: 1) whether the appellants can maintain an action for monetary damages against the appellees in their individual capacities; and 2) whether the appellants can maintain an action for injunctive relief against the appellees in their official or individual capacities.

## A. *The Claim for Monetary Damages*

■ At this stage of the litigation, the parties appear to agree, as they should, that a suit for damages against a state official in his *official* capacity is a suit against the state for eleventh amendment purposes. *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986); *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir.1987). Consequently, the appellants seek to avoid the jurisdictional bar of the eleventh amendment by suing the appellees for damages in their individual capacities. A suit against state officials in their individual capacities is not a suit against the state and, therefore, is not barred by the eleventh amendment. *Papasan*, 106 S.Ct. at 2940 n. 11; *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974). *See generally Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

When an action for damages is brought against a state official in his individual capacity, he may be able to assert an immunity defense. *See Graham*, 473 U.S. at 166–67, 105 S.Ct. at 3105–06. Here, the

---

**2.** Although neither party raises the issue, we must address whether we have jurisdiction from a final appealable order of the district court. As we recently have stated in *United States v. Benjamin*, 833 F.2d 669, 671 (7th Cir.1987) (per curiam), we have jurisdiction only if the district court dismisses the litigation; not if it dismisses the complaint. Here, the judgment reads: "Court grants defendants' motion to dismiss the complaint." R. 29. Without more, this is insufficient to terminate the action and to constitute a final judgment of the district court under *Benjamin*. *See also Reytblatt v. Denton*, 812 F.2d 1042, 1044 (7th Cir.1987) (per curiam).

Nevertheless, in *Benjamin*, we also implicitly adopted the "special circumstances" exception to this analysis. This exception permits us to exercise jurisdiction when "it is 'clear' that the court below found that 'the action could not be saved by any amendment of the complaint which the plaintiff could reasonably be expected to make....'" *California v. Harvier*, 700 F.2d 1217, 1218 (9th Cir.) (quoting *Marshall v. Sawyer*, 301 F.2d 639, 643 (9th Cir.1962)), *cert. de-*

nied, 464 U.S. 820, 104 S.Ct. 82, 78 L.Ed.2d 92 (1983); *accord Benjamin*, 833 F.2d at 672; *see also Ordower v. Feldman*, 826 F.2d 1569, 1572 (7th Cir.1987). The district court's order clearly dismisses the entire action with no reasonable prospect for the complaint to be saved by amendment. The court held that the plaintiffs' claims were either barred by the eleventh amendment, the doctrine of qualified immunity or (as the district court interpreted the plaintiffs' objection to the report of the magistrate) by the explicit refusal of the plaintiffs to bring an action against the defendants in their official capacities.

**3.** Nor do we expect to find references in the brief such as the appellees' remark that Ms. Akins "should not be allowed to fan dance her way to a viable theory." Appellees' Br. at 7. Such disrespectful comments add nothing to the substance of the argument and are inappropriate in any brief. They are especially inappropriate in the brief of a public institution in litigation with a private citizen.

defendants assert the defense of qualified immunity. Qualified immunity is designed to strike a balance between the competing concerns of allowing recovery in damages for the vindication of constitutional rights and "the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching discharge of their duties.'" *Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed.2d 1363 (1950)). When it applies, qualified immunity provides not only a defense from liability, but also "an entitlement not to stand trial or face the other burdens of litigation...." *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). "The entitlement is an *immunity from suit* rather than a mere defense to liability; ... it is effectively lost if a case is erroneously permitted to go to trial." *Id.* (emphasis in original).

In determining whether qualified immunity applies, the standard is an objective one. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. The issue is whether the defendant official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.; see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In determining whether this standard of "objective legal reasonableness," *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739, has been reached, the legal rule at stake must be identified at a "level of generality" that permits meaningful assessment of the reasonableness of the official's conduct. *Anderson v. Creighton,* — U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of preexisting law the unlawfulness must be apparent." *Id.* (citation omitted).

■ We believe that the magistrate correctly concluded that, at the time the defendants allegedly acted, they violated no "clearly established constitutional right." The question of whether a student at a state-supported university has a substantive due process right to continued enrollment in the program has been presented to the Supreme Court twice in recent times. *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 222, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985); *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 91, 98 S.Ct. 948, 955, 55 L.Ed.2d 124 (1978). On both occasions, the Court has declined specifically to decide the matter; in both cases, the Court assumed, for the sake of argument, that such a right existed and decided the case on another ground. No case from this court establishes such a right. As the magistrate pointed out, there have been several cases of fairly recent vintage in other lower federal courts that have indicated the existence of such a right. *See, e.g., Ewing v. Regents of the Univ. of Mich.,* 742 F.2d 913, 915 (6th Cir. 1984), *rev'd and remanded on other grounds,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *Stoller v. College of Medicine,* 562 F.Supp. 403, 412 (M.D.Pa. 1983), *aff'd per curiam,* 727 F.2d 1101 (3d Cir.1984). Other cases have, in dictum, suggested, albeit with significant qualifications, the existence of such a right. *See, e.g., Hines v. Rinker,* 667 F.2d 699, 703 (8th Cir.1981); *Stevens v. Hunt,* 646 F.2d 1168, 1170 (6th Cir.1981) (and citations therein); *Mahavongsanan v. Hall,* 529 F.2d 448, 449–50 (5th Cir.1976); *Gaspar v. Bruton,* 513 F.2d 843, 850 (10th Cir.1975). We believe that a university administrator, surveying these cases at the time the alleged activity described in the complaint took place, would have concluded that a substantive due process-based right to continued enrollment in a state-sponsored academic program was not clearly established. Therefore, the defendants in this case are

protected from an action for damages by the doctrine of qualified immunity.[4]

## B. *The Claim for Injunctive Relief*

The district court held that the plaintiffs were precluded from seeking injunctive relief because, in their objections to the magistrate's report, they stated at one point: "As the plaintiffs stated in their responsive memorandum in opposition to the Motion to Dismiss, at pages 4–5, they are suing the defendant state officials in their individual capacities and not in their official capacities." Order at 1. Apparently referring only to the possibility of injunctive relief against the defendants in their individual capacities, the district court also held that the Supreme Court's holding in *Mitchell*, precluded an action for injunctive relief:

> The Supreme Court recently stated that qualified immunity entitles a public official to *"immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985) (emphasis in original). Also, according to the Seventh Circuit, "a public official who is a defendant in a suit seeking an injunction is not 'on trial' at all. The suit seeks relief against him in his official capacity." *Scott v. Lacy*, 811 F.2d 1153, 1153–54 (7th Cir.1987) (*per curium*). Immunity from damages claims but not from claims for injunctive relief would make little sense; the individual defendants would still have to stand trial, and successors would not be bound by any injunction entered against the individual defendants.

*Id.*

■ We have reviewed the record carefully and must respectfully differ with the district court as to whether the plaintiffs abandoned their claim for injunctive relief against the defendants in their official capacities. When the plaintiffs' "objections to the magistrate's report" is read in its entirety, it is quite clear that they contin-

ued to press such a claim for injunctive relief. The plaintiffs' reference to pages 4–5 of their memorandum in opposition to dismiss makes this reading particularly appropriate. In that document they state:

> 1) Consequently, prospective injunctive and declaratory relief against these state officials is available to those plaintiffs, regardless of whether the defendants are sued in their official or individual capacities. Monetary damages are also available to plaintiff[s] because these state offices [sic] are being sued in their capacities as individuals, so that retroactive or monetary relief will be had against these defendants as individuals and not as state officials. Hence, 11th Amendment sovereign immunity does not operate to bar monetary damages.

Plaintiffs' Response to Motion to Dismiss at 3–4; R.11 at 3–4.

> 2) The state officers named as defendants in the case at bar are therefore neither immune from prospective injunctive relief nor, because sued in their individual capacity, from retroactive monetary relief.

*Id.* at 5.

Moreover, in their objections to the magistrate's report, the plaintiffs specifically acknowledged the continued vitality of their claim for injunctive relief:

> Magistrate Bucklo has recommended Count I stand to the extent it requests prospective injunctive relief against the officials, regardless of whether they are being sued as state officials or as individuals.

Plaintiffs' Objections to Report And Recommendation of Magistrate Bucklo at 2; R.25 at 4.

■ An action for prospective injunctive relief against a state official is brought properly in the official's *official* capacity. As the court noted in *Scott v. Lacy*, 811 F.2d 1153 (7th Cir.1987):

---

4. On appeal, the appellants also argue that their complaint raises a procedural due process claim. The magistrate was of the view that such a claim was not reasonably raised in the complaint. Magistrate's report at 9 n. 2. The appellants did not renew explicitly this argument before the district court. In our view, the matter is not properly before us. In any event, we believe that the magistrate's determination was correct.

As a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party.

*Id.* at 1153–54. Therefore, we need not deal extensively with the district court's conclusion that the doctrine of qualified immunity can shield a defendant from suit seeking injunctive relief in his individual capacity. We only note that the Supreme Court has only applied the immunity doctrine in suits for damages. *See Harlow,* 457 U.S. at 806, 102 S.Ct. at 2732 ("[O]ur decisions consistently have held that government officials are entitled to some form of immunity from suits for damages."). At least three courts of appeals have explicitly noted that qualified immunity is inapplicable to actions seeking equitable relief. *See, e.g., De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1188 n. 1 (1st Cir.1986) ("Qualified immunity is, of course, no defense to equitable relief."); *Tubbesing v. Arnold,* 742 F.2d 401, 403–04 (8th Cir.1984) ("[T]he Board members' qualified immunity defense would entitle them to summary judgment only on the damages' claims. The Board would still be required to defend itself in any trial involving Tubbesing's claim for equitable relief."); *Bever v. Gilbertson,* 724 F.2d 1083, 1086 (4th Cir.) ("[T]he appellants have no immunity from being put to trial on the equitable claims."), *cert. denied,* 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984).

### C. *Validity of Cause of Action*

In their motion to dismiss, the defendants claimed that the plaintiffs had not stated a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). In her report and recommendation to the district court, the magistrate concluded that the plaintiffs have stated a cause of action.

Magistrate's report at 9–12. As noted earlier, the district court recited that it "accepts and adopts the Report and Recommendation of the Magistrate, with the clarification noted on the reverse of this order...." Docket entry at 1. The "clarification" is, as the foregoing discussion demonstrates, a significant shift in the grounds for decision. Indeed, given the district court's disposition of the case, it was not necessary for the court to address squarely the validity of the cause of action. Moreover, we are not willing to presume that the district court would pass *sub silentio* on an issue upon which the Supreme Court has twice deferred decision and that other lower courts have, as a matter of prudence, refrained from resolving when not absolutely necessary to the decision of the case. *See Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (courts should only reach constitutional issue when necessary to the decision).

Accordingly, we think the question of the sufficiency of the complaint should be addressed in the first instance by the district court. On remand, the district court may determine that it is appropriate to address immediately the sufficiency of the complaint or, given the state of the record, and the above-cited admonition of Justice Brandeis, it may decide to postpone decision on this matter until the contours of the claim of the plaintiffs have been delineated more precisely.

### Conclusion

The district court correctly determined that count I should be dismissed insofar as it seeks damages from the defendants in either their official or individual capacities. The first theory is barred by the eleventh amendment; the second by the doctrine of qualified immunity. The district court erred, however, in dismissing count I of the complaint insofar as it seeks injunctive relief against the defendants in their official capacities.[5]

---

5. The district court summarily dismissed count II, the pendent state law claim, apparently because it had dismissed the federal claim in its entirety. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). That claim, insofar as it seeks dam-

Accordingly, the judgment of the district court is affirmed in part and reversed in part. Each party will bear its own costs of this appeal.

AFFIRMED IN PART.

REVERSED IN PART.

ages against the defendants in their individual capacities based on state law, must be reinstat-   ed.
