Lawrence **DERTZ** and Terrence Lynn, Plaintiffs,

v.

**CITY OF CHICAGO, et al., Defendants.**

No. 94 C 542.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 29, 1995.

321

Miriam N. Geraghty, James R. Potter, Kinoy, Taren, Geraghty & Potter, Chicago, IL, for plaintiffs.

Mary Leone Smith, Kathryn Zeledon Nelson, Susan S. Sher, City of Chicago, Law Department, Corporation Counsel, Chicago, IL, for defendant City of Chicago.

### *MEMORANDUM AND ORDER*

MANNING, District Judge.

Plaintiffs filed their five-count amended complaint on April 21, 1994 against the City of Chicago (hereafter "City"), Superintendent of Police, Matthew Rodriguez (hereafter "Rodriguez") and Chief Surgeon, James Bransfield (hereafter "Bransfield"). Counts I and II are brought by plaintiff Lawrence Dertz (hereafter "Dertz") alleging that the defendants violated the Americans with Disabilities Act (hereafter "ADA"), 42 U.S.C. § 12131–12134 and the federal Rehabilitation Act of 1973, 29 U.S.C. § 794 when they refused to re-employ him after a medical leave. Counts III and IV are brought by plaintiffs Dertz and Terrence Lynn (hereafter "Lynn") alleging that the city's policy of singling out for discharge policemen on leave from active duty because of psychological disabilities while exempting from discharge both physically disabled as well as non-disabled officers on leave, is in violation of the ADA, and the federal Rehabilitation Act. Count V is brought against defendants Rodriguez and Bransfield in their individual capacity only and alleges that the policies of these defendants violates the Fourteenth Amendment of the United States Constitution.

Dertz is currently on medical leave from the City of Chicago Police Department (hereafter "Department") where he has been employed as a police officer since December, 1970. Lynn is currently on medical leave from the Department where he has been employed as a police officer since 1971. Defendant City is a municipal corporation which currently employs plaintiffs Dertz and Lynn in its Police Department.

Before this court is defendants' motion to dismiss Counts I, II, III, IV and V for failure to state a claim upon which relief can be granted. Defendants contend that: (1) Counts I, II and III should be dismissed because both plaintiffs have failed to satisfy the administrative filing pre-requisites for bringing an employment claim under Title I of the ADA: (2) Count III should be dismissed as to Lynn because Lynn is not a "qualified individual with a disability" within the meaning of the ADA: (3) Count IV should be dismissed as to Lynn because Lynn is not a "qualified handicapped individual" within the meaning of the Rehabilitation Act, and (4) Count V should be dismissed because the complaint fails to state a claim against defendants Bransfield and Rodriguez under 42 U.S.C. § 1983, the complaint fails to state an equal protection claim, Rodriguez and Bransfield are entitled to qualified immunity, and defendants Bransfield and Rodriguez are not subject to suit under 42 U.S.C. § 1983. For the reasons stated below, defendants' motion to dismiss Counts I, II, III, IV and V is denied.

## BACKGROUND

### Plaintiff Dertz

Dertz was hired as a police officer for the City of Chicago in December 1970. From 1970 until August, 1991, Dertz performed his job to the satisfaction of the City. During the last year that Dertz was on active duty as a police officer, he experienced marital difficulties which reached a culmination in August 1991. Dertz voluntarily sought the assistance of a therapist employed by the defendants. That same month, Dertz was hospitalized at Riveredge Psychiatric Hospital for a two-week period. During his hospitalization, he was given medication for depres-

sion. After he was released from the hospital, Bransfield referred Dertz to Stanard and Associates (hereafter "Stanard") for a psychological evaluation. It was the recommendation of Stanard that Dertz not return to duty and be re-evaluated in six months.

In November, 1991, Dertz filed a union grievance seeking to return to active duty and to recover all benefits due him as a result of the City's refusal to return him to active duty. With the consent of Dertz's doctor, he was taken off medication for depression. In July 1992, defendants returned Dertz to work without police powers, and in September, 1992, Dertz returned to full duty. In October 1992, a panel of two psychologists and a psychiatrist met to consider Dertz's return to work grievance. Their recommendation was that although Dertz was fit to return to a civilian job with the City, he was not fit to return to active police duty, to have full police powers, to have police credentials or to carry a weapon. In November 1992, the City informed Dertz that he would be placed on medical leave and to use his vacation and sick pay. In March 1993, Dertz applied for a disability pension with the Police Pension Board (hereafter "Board").

In June 1993, defendants again ordered Dertz to undergo a psychological evaluation. Dertz was referred to Stanard where he was determined to be psychologically unfit for police duty. Pursuant to his application for disability benefits with the Board, Dertz was evaluated on two separate occasions by a psychiatrist, Dr. Michael Rogers. On both occasions, Dr. Rogers found Dertz to be fit to return to full duty as a police officer. In August 1993, Rodriguez sought Dertz's discharge from the Department on the grounds that he was psychologically unfit to perform the duties of a police officer, based upon Bransfield's recommendation.

By order of November 23, 1993, Dertz's application for disability benefits was denied by the Board. The Board concluded that Dertz "is not disabled and therefore this request for ordinary disability benefits BE AND IS HEREBY DENIED." After receiving notice that his disability application had been turned down, Dertz again requested reinstatement with the Department. De-

fendants would not consider Dertz for reinstatement.

### Plaintiff Lynn

Lynn was hired as a police officer for the City in October 1971. On July 8, 1991 Lynn was attempting to effect an arrest when an assailant struck him on the face. During the ensuing struggle, Lynn and the arrestee fell to the ground. It was later discovered that Lynn suffered a subdural hematoma. As a result of his injuries, Lynn went on the Department medical roll on July 13, 1991 and remained on medical roll until July 19, 1992. Although Lynn went back to limited police duties for a time, he was unable to continue those duties due to his injuries. At the request of Bransfield, Lynn was sent for psychological evaluation by Stanard and was found psychologically unfit for duty.

In ·November 1992, Lynn was granted a leave of absence and applied for disability pension from the Board. Lynn is currently receiving disability benefits from the Board. In November 1993, Dr. Bransfield filed charges with the Board against Lynn which seek his dismissal as a police officer on the grounds that "based upon psychological testing [Lynn] ... is unfit to resume the duties of a police officer".

### DISCUSSION

■ In ruling on a motion to dismiss, the court must presume the well pleaded allegations of the complaint to be true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977). In addition, this court must view the allegations in the complaint in a light most favorable to the plaintiff. *Gomez v. Illinois State Board of Educ.,* 811 F.2d 1030, 1039 (7th Cir.1987). Dismissal is only proper if it appears beyond any doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

The ADA is divided into three "Titles" or "Subchapters"—Title I is captioned "Employment" and provides in a pertinent part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such an individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, privileges of employment. 42 U.S.C.A. § 12112(a).

A "covered entity" is defined as "an employer, employment agency, labor organization, or joint management committee," and an "employer" includes persons engaged in industry affecting commerce who have 15 or more employees. 42 U.S.C.A. § 12111(2), § 12111(5). A "person" includes a state or other governmental agencies. 42 U.S.C.A. § 12111(7). Defendant City of Chicago is a governmental agency with 15 or more employees and is therefore subject to suit under Title I of the Act. Title I incorporates the procedures of Title VII of the Civil Rights Act of 1964, which require a plaintiff to file a charge with the Equal Opportunity Commission prior to filing a civil claim in federal court. See § 12117.

Title II of the Act is captioned "Public Services". The relevant provision reads:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C.A. § 12132.

"Public entity" includes any state or local government and any department, agency or other instrumentality of a state or local government. 42 U.S.C.A. § 12131(1)(A) and (B). Defendant City of Chicago is an instrumentality of a state government and is therefore subject to suit under Title II.

### Administrative exhaustion is not required.

■ Dertz brings Count I against the City alleging that the City violated the ADA when it refused to re-employ him after a medical leave. The threshold issue in this case is whether plaintiffs must exhaust administrative remedies prior to bringing a claim under Title II of the ADA in federal court. While defendants contend that administrative ex-

haustion is required, they cite no caselaw to support the proposition that such exhaustion is required prior to filing a suit under Title II of the ADA. Rather, defendants rely on the enforcement provisions in place for actions brought pursuant to Title I of the ADA. The defendants argue that the regulations issued by the Department of Justice (hereafter "DOJ") under Title II cross-reference Title I of the Act in outlining the standards by which to assess employment discrimination under Title II of the Act.

> (b)(1) For purposes of this part, the requirements of Title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission in 29 C.F.R. part 1630 apply to employment in any service, program or activity conducted by a public entity if that public entity is also subjected to the jurisdiction of Title I. 28 C.F.R. § 35.140.

Defendants interpret this language as imposing the procedural requirements of Title I on all plaintiffs attempting to bring Title II employment claims against a public entity that is subject also to the requirements of Title I. Indeed, we recognize that because Count I is an employment discrimination claim, Dertz could have brought Count I under Title I of the ADA. However, he chose to bring Count I under Title II.

In *Petersen v. Univ. of Wis. Bd. of Regents,* the court was faced with a similar issue when the plaintiff brought a claim under Title II that could have been brought under Title I. 818 F.Supp. 1276 (W.D.Wis. 1993). In a non-binding, yet well-reasoned opinion, the court held that the regulations found in 29 C.F.R. part 1630, to which 28 C.F.R. § 35.140 refers, impose only the substantive requirements of the Title I employment provisions on Title II defendants rather than imposing Title I procedural requirements on Title II plaintiffs. *Id.* at 1280. The court reasoned that 29 C.F.R. part 1630 does not contain any reference to exhaustion of administrative remedies or any other procedural requirements to be imposed on plaintiffs. Instead the regulations that address

processing administrative complaints under Title I of the Act are contained in a separate section of the Equal Employment Opportunity Commission (hereafter E.E.O.C.) regulations. *Id.* (construing 29 C.F.R. Part 1641). It is unlikely that if the DOJ had meant the procedural requirements of Title I to apply to claims of employment discrimination brought under Title II, it would have referred to only the part of the E.E.O.C. regulations governing substantive requirements imposed on defendants and neglected to refer to the part of the regulations that address procedural requirements imposed on plaintiffs. *Id.* We agree with the *Petersen* court that the procedural requirements of Title I do not apply to Title II plaintiffs.

■ Therefore, the relevant enforcement provisions in this case are those outlined in Title II, pursuant to which Dertz brought Count I. Title II adopts the remedies, rights and procedures the Rehabilitation Act of 1973 (29 U.S.C.A. § 794(a)), which does not require exhaustion of administrative remedies and allows a plaintiff to go directly to federal court. *See* 42 U.S.C.A. § 12133 (outlining enforcement provisions of Title II); *B. Doe, M.D. v. St. Joseph's Hosp. of Fort Wayne,* 788 F.2d 411, 426 (7th Cir.1986)[1]. Thus, the courts that have ruled on this issue have found that because Title II takes its procedures from the Rehabilitation Act, it does not contain an exhaustion requirement, and a Title II case can be filed without having filed with a federal agency first. *Doe v. County of Milwaukee,* 871 F.Supp. 1072, 1075 (E.D.Wis.1995); *Petersen v. Univ. of Wis. Bd. of Regents,* 818 F.Supp. 1276, 1277 (W.D.Wis.1993); *Ethridge v. State of Alabama,* 847 F.Supp. 903, 3 A.D. Cases 162 (M.D.Ala.1993).

In reaching this result, the courts have also looked to the regulations promulgated by the DOJ interpreting Title II of the ADA. *Bechtel v. East Penn School District of Lehigh County, Pa.,* No. 93-T-754-5, 1994 WL

---

**1.** 29 U.S.C.A. § 794(a) adopts the remedies, procedures and rights set forth in Title VI of the Civil Rights Act of 1964. In *Doe,* the 7th Circuit, citing *Cannon v. University of Chicago,* 441 U.S.

677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), held that Title VI does not contain an exhaustion requirement.

3396 (E.D.Pa.1994). The applicable language reads as follows:

> The Act requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies. Because the Act does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time. 28 C.F.R. § 35.172. app. A. *See also* Title II Technical Assistance Manual, U.S. Department of Justice, Civil Rights Division, Office on the Americans with Disabilities Act at 48.

Therefore, an analysis of Title II regulations makes it clear that while resorting to administrative remedies is optional, it is not mandatory. Dertz was not required to exhaust administrative remedies prior to bringing his claim in Count I.

Likewise, Dertz and Lynn were not required to exhaust administrative remedies prior to filing their claims in Count III in federal court. Count III alleges that plaintiffs were denied participation in a "service or program"—the Department medical leave program—due to their psychological disability in violation of the ADA. Claims which allege the denial of a service by a public entity due to a disability are covered under Title II, so those enforcement provisions are applicable. 42 U.S.C.A. § 12132. Title II provisions do not require administrative exhaustion. Accordingly, the defendants motion to dismiss Counts I and III on those grounds is hereby denied.

Finally, the defendants claim that Count II should be dismissed because plaintiffs failed to exhaust the administrative remedies set forth in the ADA. However, plaintiffs bring Count II pursuant to § 504 of the Rehabilitation Act of 1973, not the ADA. As stipulated above, the Rehabilitation Act does not require administrative exhaustion. Thus, the motion to dismiss Count II is denied.

### Lynn and Dertz state claim under the ADA.

■ The City contends that Count III as to Lynn should be dismissed because Lynn

does not come under the definition of a "qualified individual with a disability" as set forth in Title I of the ADA. Although Count III is brought under Title II of the ADA, the City again argues that 28 C.F.R. § 35.140 issued by the DOJ under Title II, cross-references Title I of the Act in outlining the standards by which to judge employment discrimination under Title II. In effect, the City argues that all employment-related claims brought under the ADA must be held to the substantive requirements of Title I.

Title I provides that a "qualified individual with a disability" is "an individual with a disability who, with or without a reasonable accommodation, can perform the essential functions of the employment position that such an individual holds or desires". 42 U.S.C.A. § 12111(8). By his own admission, Lynn is not qualified to perform the essential functions of a police officer, and is currently receiving disability benefits from the Board. Therefore, the City asserts that Lynn cannot state a claim under the ADA.

Plaintiffs argue that Lynn's claim is not for denial of employment, but of a public service, and is therefore properly brought pursuant to Title II. For that reason, the DOJ regulations which cross-reference Title I in outlining the standards by which to judge employment discrimination under Title II are not applicable.

The issue of whether the denial of participation in an employment leave program qualifies as "employment discrimination" under Title I or as "discrimination in the administration of a public program" under Title II, appears to be one of first impression. We hold that although employment related, the Department leave program is a "program" within the meaning of Title II, thus the procedural and substantive requirements of Title II apply to Lynn's claim. *See Galloway v. Superior Ct. of Dist. of Columbia,* 816 F.Supp. 12, 15 (D.C.1993) (program, as defined by the Rehabilitation Act, encompasses all operations of instrumentality of state or local government).[2]

**2.** The standards required under Title V of the Rehabilitation Act of 1973 apply for purposes of

the ADA "because Title II of the ADA essentially extends the antidiscrimination prohibition em-

Under Title II of the ADA, a "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies or practices ... meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C.A. § 12131(2). As a psychologically disabled police officer, Lynn is a "qualified individual with a disability" who meets the "essential eligibility requirements" for participation in the leave program.[3] Accordingly, the City's motion to dismiss Count III as to Lynn is denied.

Finally, defendants contend that if the Department leave program is a "program" within the meaning of Title II, then count III as to Dertz should be dismissed. They argue that if Dertz is not disabled, as he claims, then he is not eligible to be in the program. However, the City has repeatedly concluded that in their view, Dertz is disabled, and they placed Dertz in the leave program accordingly. The City cannot now argue that Dertz is not eligible for the program because he is not disabled when it was responsible for placing him in the program, and repeatedly denied his requests to be reinstated, because it perceived him to be psychologically disabled. Dertz does not allege that the City sought to remove him from the leave program because it no longer viewed him as disabled, but rather he alleges that it sought his dismissal because of his psychological disability. The issue is whether the City perceived Dertz as psychologically disabled and sought to remove him from the leave program for that reason. Thus, the City's request to dismiss Count III as to Dertz is denied.

bodied in section 504 to all actions of State or local governments." 28 C.F.R. pt. 35, app. A at 442 (1993). Thus, past Rehabilitation Act interpretations are considered persuasive authority. *See also Stillwell v. Kansas City, Mo. Board of Police Commissioners,* 872 F.Supp. 682, 685 (W.D.Mo.1995); *Dees v. Austin Travis County Mental Health and Mental Retardation,* 860 F.Supp. 1186, 1189 (W.D.Tex.1994).

## *Lynn states a claim under the Rehabilitation Act.*

Defendants seek to dismiss Count IV as to Lynn because he does not come under the definition of "qualified handicapped individual" as set forth in the Rehabilitation Act and interpretative case law. The Rehabilitation Act of 1973 Section 504 provides:

No otherwise qualified individual with disabili[ties] .. shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 29 U.S.C. § 794(a).

Because Lynn cannot perform the essential functions of the job, defendants argue that his claims are not covered under the Rehabilitation Act.

Plaintiffs assert that the Rehabilitation Act has a wider scope, and is not restricted to the employment context. Specifically, they cite DOJ regulations formulated to implement the Rehabilitation Act.

### Sec. 41.32. Qualified Handicapped Person

"Qualified handicapped person means: (a) With respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question and (b) with respect to services, a handicapped person who meets the essential eligibility requirements for the receipt of such services." 28 C.F.R. Part 41.

Lynn contends that he is seeking services for which he is qualified under subpart (b).

Although employment related, the Department leave program is a "service" or "program" within the meaning of the Rehabilitation Act. The Act defines "program" as "all of the operations of ... a department, agen-

3. The Chicago Police Department's leave program provides for the discretionary granting of leaves of absence of up to one year with the option to apply for annual one year extensions to that leave. The leave program is available to police officers for a variety of reasons, including, but not limited to required military service, leave to accept a higher temporary position, the assumption of political office, and disability. See Addendum to General Order 84–7.

cy, special purpose district or other instrumentality of a State or local government". 29 U.S.C. § 794(b)(1)(A). Certainly, the leave program falls within this purview. Thus, Lynn need only meet the "essential eligibility requirements for the receipt of that service" as outlined in subpart (b) of Sec. 41.32. As a disabled employee placed on leave of absence status as an employee of the Department, Lynn clearly meets those eligibility requirements. Lynn states a claim under the Rehabilitation Act. Hence, the defendants' motion to dismiss Count IV as to Lynn is denied.

### Count V states a claim against Rodriguez and Bransfield.

■ Count V is brought against Rodriguez and Bransfield in their individual capacity only and alleges that the policies of these defendants violate the Fourteenth Amendment of the United States Constitution. To establish an Equal Protection claim, a plaintiff must show "that he or she is a member of a protected class, that he or she is otherwise similarly situated to members of the unprotected class, and that he or she was treated differently from members of the unprotected class". *McMillian v. Svetanoff,* 878 F.2d 186, 189 (7th Cir.1989). Plaintiffs allege that they are members of a class of individuals who have been found to be or are thought to be psychologically impaired from performing police duties and who are therefore in the status of being on leave of absence pending their recovery. Such class members are allegedly similarly situated to both physically disabled and non-disabled officers on leave of absence from the police department but are treated differently by the defendants in that they are singled out for separation. Plaintiffs allege that the existence of a policy which singles out for dismissal psychologically disabled officers who are on leave of absence while permitting physically impaired and non-disabled officers to remain on leave status indefinitely is in violation of the Equal Protection Clause.

■ The defendants first contend that plaintiffs' allegation as to their class membership is insufficient to state an equal protection claim, and that the claim fails to allege purposeful or intentional discrimination. The essence of an equal protection claim is that a state actor singled out a particular group for disparate treatment and selected his course of action in order to discriminate for invalid reasons. *Shango v. Jurich,* 681 F.2d 1091, 1104 (7th Cir.1982). While the Supreme Court has yet to find mentally disabled persons a "suspect class" which would subject classifications on the basis of mental disability to strict scrutiny, the Court has held that such classifications must at least have a rational basis. *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The plaintiffs' complaint alleges that they are members of a class of psychologically disabled officers, and that the defendants' policy of treating officers with real or perceived psychological disabilities differently from other officers on leave is "based solely on prejudice without any legitimate governmental purpose". Such an allegation is clearly sufficient to state an equal protection claim.

■ The defendants next argue that the claims against Rodriguez and Bransfield are in fact official capacity claims, and for that reason must be dismissed. We agree with the defendants that the claims in Count V are in fact official capacity claims, so we need not address the defendants' qualified immunity claim and other arguments made as to the plaintiffs' individual capacity claims.

■ In Count V, plaintiffs seek only declaratory and injunctive relief against Rodriguez and Bransfield in their individual capacities. However, the Seventh Circuit has determined that "an action for prospective injunctive relief against a state official is brought properly in the official's official capacity." *Akins v. Bd. of Governors of State Colleges and Universities,* 840 F.2d 1371, 1377 (7th Cir.1988), *vacated on other grounds,* 488 U.S. 920, 109 S.Ct. 299, 102 L.Ed.2d 319 (1988). In *Scott v. Lacy,* the court explained:

> As a practical matter, a public official who is a defendant in a suit seeking an injunction is not "on trial" at all. The suit seeks relief against him in his official capacity; he need not attend the trial, which will be

conducted by attorneys representing the governmental body. If he leaves office during the interim, he leaves the case behind and his successor becomes the party. 811 F.2d 1153 (7th cir. 1987).

Moreover, the equitable relief that the plaintiffs request—a declaration that the defendant's policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals. *Feit v. Ward,* 886 F.2d 848, 857 (7th Cir. 1989). Injunctive relief against a state official may be recovered only in an official capacity suit. *Hill v. Shelander,* 924 F.2d 1370, 1374 (7th Cir.1991).

█ However, the mere fact that the plaintiffs sued the defendants in their individual capacities, and yet seek injunctive relief, is not grounds in itself to invoke a dismissal. In *Akins v. Bd. of Governors of State Colleges and Universities,* the Seventh Circuit reversed a district court's decision that the plaintiff's prayer for injunctive relief could not be sustained because the complaint named the officials in their individual capacity, and injunctive relief may only be recovered from public officials acting in their official capacities. 840 F.2d 1371 (7th Cir.1988). The Court of Appeals reinstated the plaintiff's claim for injunctive relief. Although the Court recognized that the pleadings explicitly stated they sued the defendants in their individual capacities, it held that in such cases, the court must look at the "complaint in its entirety" in order to surmise whether an individual or official capacity suit was intended. *Id.* at 1377.

In *Kolar v. County of Sangamon,* the Seventh Circuit decided a case in which a § 1983 claim was brought by a plaintiff who had failed to specify whether she was suing the defendant in his official or individual capacity. 756 F.2d 564 (7th Cir.1985). The Court concluded that the suit was an official capacity suit, based on the fact that the defendant was referred to as "Defendant, Sheriff of Sangamon County" at various points and because the conduct described in the complaint "related solely to the Sheriff's authority or

duty to appoint and promote employees". *Id.* at 567.

Similarly in this case, Rodriguez and Bransfield are referred to as the "Superintendent of the Police Department" and the "Chief Surgeon of the Police Department" ... [who] "are not acting as ordinary citizens but as law enforcement officials acting under the authority of office." (Pltf.Memo at 11). The conduct described in the complaint relates solely to the defendants' authority or duty to oversee the operations of the Department, and to select those officers who will be charged with unfitness and processed for discharge from the Department. Such allegations clearly establish that it is the defendants' actions in their official capacity that form the basis for the constitutional deprivation which is alleged in the complaint. *Hill v. Shelander,* 924 F.2d 1370, 1373 (7th Cir. 1991). Thus, the plaintiff's claims against Rodriguez and Bransfield are in their official capacities only.

█ Defendants contend that because Count V must be construed as a claim against Rodriguez and Bransfield in their official capacities, it must be dismissed for two reasons. A suit which names a defendant in his official capacity only is in fact a suit against the City. *Jungels v. Pierce,* 825 F.2d 1127, 1129 (7th Cir.1987). The defendants argue that because the City is a named defendant, the official capacity claims against Rodriguez and Bransfield are redundant and should be dismissed. However, the City was not named in Count V, so the Fourteenth Amendment claims against Rodriguez and Bransfield in their official capacities are equivalent to claims against the City, but they are not redundant.

Secondly, the defendants contend that neither Rodriguez nor Bransfield has the policy-making authority required to create municipal liability under 42 U.S.C.A. § 1983. Specifically, the defendants argue that only those officials with "final policymaking authority" can create municipal liability under § 1983, and identifying such municipal policymakers is a question of state law. *See Limes–Miller v. City of Chicago,* 773 F.Supp. 1130 (N.D.Ill. 1991) (citing *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658,

98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). Under Illinois law, the authority to establish employment policy for the City of Chicago is vested in the City Council. The City officially prohibits discrimination on the basis of one's disability. Thus, the defendants contend that the City cannot be liable under § 1983 for the actions of Rodriguez and Bransfield because they are not final policymakers, and the alleged unconstitutional action did not execute an official policy of the City.

 However, the defendant's assertions demonstrate an oversimplification of the terms "final policymaker" and "official policy" for purposes of establishing § 1983 liability. Municipal liability attaches where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *See Eversole v. Steele,* 59 F.3d 710 (7th Cir.1995) (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). While the City Council is the final authority on employment termination, the plaintiffs do not allege that they were actually terminated due to their real or perceived psychological disabilities. Rather, they assert that Rodriguez and Bransfield have a policy of singling out for discharge police officers on leave for psychological reasons, and filing charges with the Board recommending their dismissal, while allowing physically disabled and non-disabled officers to remain on leave. Rodriguez and Bransfield possess the final authority to decide which officers are sought out for discharge. Thus, defendants possess the authority to establish the municipal policy that is the source of the alleged constitutional violation.

Furthermore, if the decision to adopt a particular form of action is properly made by authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). Thus, as the defendants have the decisionmaking authority to seek the dismissal of police officers under their supervision, any actions taken pursuant to this authority reflect official city policy. As individuals with final policymaking authority who are acting pursuant to official city policy, the actions of these two defendants subject the City to § 1983 liability. Thus, we will construe the claims against Rodriguez and Bransfield in Count V as claims against the City. Accordingly, the defendants' motion to dismiss Count V is denied.

### CONCLUSION

For the reasons stated above, the defendants' motion to dismiss Counts I, II, III, IV and V for failure to state a claim upon which relief may be granted is denied.