Bernard SCHROEDER, Plaintiff,

v.

CITY OF CHICAGO, John J. Tully, and Audley Connor, individually and as agents of the Chicago Fire Department, Defendants.

No. 88 C 9496.

United States District Court, N.D. Illinois, E.D.

June 27, 1989.

J. Peter Dowd, N. Caroline Harney, Dowd & Resnick, Chicago, Ill., for plaintiff.

Judson H. Miner, Corp. Counsel, City of Chicago by Laura Hutchinson and Patricia M. Carroll, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Plaintiff claims that defendants arbitrarily removed him from the payroll of the Chicago Fire Department. Plaintiff also blames defendants for the delay in his receipt of disability benefits. Based on these allegations, plaintiff has filed suit pursuant to 42 U.S.C. § 1983 and 29 U.S.C. § 794. His three-count complaint asserts violations

of procedural due process, substantive due process, and the Rehabilitation Act of 1973. Defendants now move to dismiss a substantial portion of plaintiff's complaint. In the same motion, defendants seek dismissal of the City of Chicago from Counts I and II of the complaint. For the reasons stated herein, the court grants defendants' motion.

## FACTS

For nearly 20 years, plaintiff Bernard Schroeder worked as a firefighter for the City of Chicago. While fighting a fire on October 23, 1985, Schroeder suffered injuries to his back, head, and neck. These injuries rendered Schroeder incapable of remaining on active duty. As a result, he began an extended medical lay-up. During the first ten months of 1986, Schroeder underwent a series of physical examinations—three by his personal physician, two by a doctor whom the Chicago Fire Department had recommended. Following these examinations, both doctors told Fire Department officials that Schroeder was unable to resume active duty.

On November 15, 1986, Chief John Tully, the Fire Department's Director of Personnel, allegedly removed Schroeder from the Fire Department payroll without giving Schroeder notice or a hearing. According to the complaint, Tully discharged Schroeder based on unfounded allegations that Schroeder had engaged in alcohol abuse during his tenure with the Fire Department.

After his removal from the payroll, Schroeder applied for duty disability benefits pursuant to the Illinois Pension Code, Ill.Rev.Stat. ch. 108½, para. 6–151 (1987). Although Schroeder ultimately received an award of benefits, the Retirement Board of the Firemen's Annuity and Benefit Fund ("the Retirement Board") did not process Schroeder's application until eight months had elapsed. Schroeder attributes this eight-month delay to the actions of Tully and Dr. Audley Connor, Director of the Fire Department's Medical Section. Initially, the Retirement Board refused to consider Schroeder's eligibility for benefits until it received a discharge certificate from the Fire Department. Tully and Dr. Connor allegedly failed or refused to provide such a discharge certificate to the Retirement Board.

## DISCUSSION

Schroeder's complaint names three defendants: Tully, Dr. Connor, and the City of Chicago. The complaint alleges that defendants arbitrarily discharged Schroeder and improperly obstructed his acquisition of disability benefits. Based on these alleged improprieties, Schroeder asserts three claims against defendants. Count I of the complaint alleges that defendants violated Schroeder's Fourteenth Amendment right to procedural due process. Count II contends that defendants infringed Schroeder's substantive due process rights under the Fourteenth Amendment. Finally, Count III maintains that defendants discriminated against Schroeder in contravention of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Insofar as Schroeder bases his procedural due process claim on the delay in his acquisition of benefits, defendants move to dismiss Count I. In addition, defendants ask the court to dismiss Counts II and III in their entirety. Defendants also move to dismiss the City of Chicago from Counts I and II. The court will now examine the various aspects of defendants' motion to dismiss.

### I. Procedural Due Process

In Count I, Schroeder claims that defendants violated his right to procedural due process in two ways—first by discharging him arbitrarily, then by impeding the processing of his application for benefits. Defendants argue that Schroeder cannot maintain a due process claim based on the delay in his receipt of disability benefits. This court agrees.

In order to allege a violation of procedural due process, Schroeder must first establish that defendants deprived him of a property interest protected by the Fourteenth Amendment. *See Cornelius v. LaCroix*, 838 F.2d 207, 210 (7th Cir.1988). Schroeder claims to possess a property interest in

duty disability benefits; but "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). By establishing the terms of eligibility for certain benefits, state law defines the scope of an individual's property interest in those benefits. *Id.* Therefore, to determine the dimensions of Schroeder's property interest in disability benefits, this court must consult the state law on which Schroeder based his claim of entitlement. Under the Illinois Pension Code, an injured firefighter may not receive duty disability benefits until the Retirement Board has authorized payment of such benefits. Ill.Rev.Stat. ch. 108½, paras. 6–179, 6–185 (1987). Consequently, until the Retirement Board ruled on Schroeder's application, he had no legitimate claim of entitlement to benefits. Defendants' alleged misconduct preceded the Retirement Board's ruling. Thus, at the time defendants purportedly violated his right to due process, Schroeder had only a unilateral expectation that he would receive disability benefits. Even assuming that defendants took steps to delay Schroeder's acquisition of benefits, defendants did not deprive Schroeder of a property interest that he already possessed.[1] For this reason, Schroeder cannot state a due process claim based on the delay in his receipt of benefits. He simply cannot invoke the Due Process Clause to protect a property interest in benefits that he had not yet obtained: "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has *already acquired* in specific benefits." *Roth,* 408 U.S. at 576, 92 S.Ct. at 2708 (emphasis added); *see also Cornelius,* 838 F.2d at 210 (the Fourteenth Amendment protects property rights derived from people's "legitimate claim of entitlement to

keep that which presently securely belongs to them").

## II. Substantive Due Process

Count II asserts that defendants violated Schroeder's substantive due process rights under the Fourteenth Amendment. As the court has already noted, the delay in Schroeder's receipt of disability benefits does not constitute a due process violation. Consequently, Schroeder can state a claim under Count II only if he can establish that defendants violated his substantive due process rights by discharging him.

In moving to dismiss Count II, defendants do not challenge Schroeder's assertion of a property interest in his job with the Chicago Fire Department. A municipal ordinance provides that firefighters for the City of Chicago may only be discharged for just cause. For firefighters like Schroeder, this ordinance creates a property right in continued employment. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). Without questioning the validity of this property interest, defendants contend that the court should dismiss Count II because the doctrine of "substantive due process" does not apply to property rights. Contrary to defendants' assertion, both the Supreme Court and the Seventh Circuit have employed substantive due process analysis when assessing the constitutionality of zoning ordinances and zoning decisions. *See Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Harding v. County of Door,* 870 F.2d 430 (7th Cir.1989); *Coniston Corp. v. Village of Hoffman Estates,* 844 F.2d 461 (7th Cir.1988). Indeed, the Seventh Circuit has not ruled out the possibility that some deprivations of property might arouse substantive due process concerns. *Coniston Corp.,* 844 F.2d at 465–68. Likewise, this court cannot categorically conclude that

---

1. Perhaps if the Illinois Pension Code mandated prompt resolution of disability claims, then Schroeder could argue that defendants deprived him of his property interest in an expeditious ruling on his application. The Illinois Pension Code, however, provides no timetable for the processing of disability claims.

the loss of property never implicates substantive due process rights.

■ In the instant case, however, Schroeder fails to state a substantive due process claim based on his discharge from the Fire Department. Under the doctrine of substantive due process, a property deprivation passes constitutional muster unless it is invidious or irrational. *Harding*, 870 F.2d at 431; *Coniston Corp.*, 844 F.2d at 467. After considering the allegations in Schroeder's complaint, this court cannot properly characterize Schroeder's discharge as either invidious or irrational. To qualify as an invidious act, a deprivation of property must violate specific constitutional guarantees. *Coniston Corp.*, 844 F.2d at 467. Thus, when determining whether a particular deprivation is invidious, the courts have regarded "substantive due process" as "a shorthand for the fact that the Supreme Court has interpreted the due process clause of the Fourteenth Amendment to confer certain substantive rights based mainly on the Bill of Rights." *Brown v. Brienen*, 722 F.2d 360, 366 (7th Cir.1983). Schroeder does not contend that his discharge violated any specific constitutional guarantees contained in the Bill of Rights. Instead, he maintains that defendants discharged him arbitrarily. The facts alleged in Schroeder's complaint, however, belie his assertion that defendants acted irrationally when they removed him from the Fire Department payroll. According to the complaint, two doctors who examined Schroeder repeatedly told Fire Department officials that Schroeder's injuries would prevent him from returning to active duty. Based active duty. Based on these medical opinions, defendants could quite reasonably have concluded that Schroeder should no longer remain on the payroll. Given his medical condition at the time of his discharge, Schroeder cannot plausibly depict defendants' decision to discharge him as "irrational." As a result, Schroeder cannot obtain relief under a substantive due process theory.

### III. Section 504 of the Rehabilitation Act

■ Count III alleges that defendants discriminated against Schroeder based on his past history of treatment for alcoholism. Schroeder asserts that defendants' allegedly discriminatory conduct violated § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Section 504 prohibits discrimination against otherwise qualified individuals based on their handicaps. To state a claim under § 504, however, Schroeder must allege that he suffered discrimination under a program or activity receiving federal financial assistance. *See* 29 U.S.C. § 794(a). Schroeder's complaint fails to identify any program or activity that falls within the purview of the Rehabilitation Act. The complaint simply alleges that the City of Chicago is a program or activity receiving federal financial assistance as defined by 29 U.S.C. § 794(b)(1)(A). This allegation rests on a misinterpretation of the statute. Section 504(b)(1)(A) of the Rehabilitation Act defines "program or activity" as the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government." *Id.* § 794(b)(1)(A). The City of Chicago does not fit this statutory definition of "program or activity." The City is not a department or instrumentality of a local government. Rather, as a full-blown municipality, the City embodies an entire local government.

Even after its expansion by a 1988 Congressional amendment, the Rehabilitation Act's definition of "program or activity" does not encompass the City of Chicago. When discussing its rationale for amending the Act, Congress cited a need to restore the "broad, *institution-wide* application" of federal antidiscrimination laws whose scope the Supreme Court had narrowed. Civil Rights Restoration Act of 1987, Pub. L. 100–259, § 2, 102 Stat. 28 (1988) (to be codified at 20 U.S.C. § 1687 note) (emphasis added). By referring to "institution-wide" application of the Rehabilitation Act, Congress indicated its intent to include federally funded institutions like hospitals or universities within the amended definition of "program or activity." By contrast, nothing in the amendment's legislative history suggests that Congress contemplated classifying an entire municipality like the City of Chicago as a "program or activity"

subject to § 504 of the Rehabilitation Act. Therefore, Schroeder cannot base a § 504 claim on the premise that the City of Chicago constitutes a "program or activity" under the Rehabilitation Act.

### IV. The City's Liability under Section 1983

■ Generally, the tortious acts of municipal employees do not expose a municipality to liability under 42 U.S.C. § 1983. *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). A municipality incurs liability under § 1983 only if execution of the municipality's official policy or custom results in a constitutional injury. *Id.* at 694, 98 S.Ct. at 2037. Schroeder's complaint does not allege that his injuries stemmed from the application of an official policy or custom. For this reason, defendants ask the court to dismiss the City of Chicago from Counts I and II, which assert due process claims based on § 1983. As Schroeder points out, however, the action of a single municipal official can subject a municipality to § 1983 liability if the official "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Schroeder claims that Tully and Dr. Connor wielded final policymaking authority when they discharged Schroeder and delayed his acquisition of benefits. Relying on this rationale, Schroeder avers that his complaint provides a basis for holding the City of Chicago liable for his injuries under § 1983.

As this court has already observed, most of the improprieties alleged in Counts I and II do not amount to due process violations. Now that the court has dismissed part of Count I and all of Count II, Schroeder's only remaining § 1983 claim revolves around the allegation that his discharge violated procedural due process. With respect to Schroeder's discharge, neither Tully nor Dr. Connor possessed ultimate policymaking authority. In 1982, the Chicago City Council adopted an ordinance governing the discharge of firefighters. This ordinance requires the Chicago Fire Department to give notice to an employee before discharging him. If Tully discharged Schroeder without notice, as the complaint alleges, then Tully violated established municipal policy. Under these circumstances, the court cannot fairly attribute Tully's action to the City of Chicago: "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988). Because Schroeder's complaint fails to allege facts justifying municipal liability under § 1983, the court dismisses the City of Chicago from Counts I and II.

### CONCLUSION

For the foregoing reasons, this court grants defendants' motion to dismiss. The court dismisses Count I insofar as it alleges a due process violation based on the delay in Schroeder's receipt of disability benefits. In addition, the court dismisses Counts II and III in their entirety. Finally, the court dismisses the City of Chicago from Counts I and II.

IT IS SO ORDERED.