Nicholas DEVITO, Plaintiff–Appellant,

v.

CHICAGO PARK DISTRICT and Personnel Board of the Chicago Park District, Defendants–Appellees.

No. 95–2568.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1996.

Decided May 9, 1996.

Robert A. Wolf (argued), Hinsdale, IL, for Plaintiff–Appellant.

Nelson A. Brown, Jr. (argued), Chicago, IL, for Defendants–Appellees.

Before COFFEY, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

Nicholas DeVito filed suit against the Chicago Park District and its Personnel Board under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, alleging that the Park District fired him because he had suffered a job-related back injury. The defendants contend that (1) DeVito was not protected by the ADA because he was not an "employee" or a qualified applicant for employment at the time of the alleged discriminatory act and (2) neither the Park District nor the Personnel Board are proper defendants in this suit. The district court granted summary judgment to the defendants on the first ground and thus found it unnecessary to reach the second. DeVito appeals, and we reverse.

## I.

DeVito worked as a building and construction (B & C) laborer for the Park District. In 1985, he suffered a job-related back injury that prevented him from performing his previous, heavy-duty job. Following his injury, the Park District assigned DeVito to a new, "light-duty" job. DeVito continued working at the light-duty job until 1989. In May 1989, four years after his injury occurred, the Park District charged DeVito with falsely representing his medical condition and began an investigation. A pretermination hearing was held on May 15, 1989. The Park District decided to discharge DeVito and mailed a termination notice on August 1, 1989.

On August 4, 1989, DeVito appealed his termination: first to a hearing officer, and then to the Park District's Personnel Board.[1] At the hearings, DeVito maintained that he was truly injured and could not perform heavy labor. The proceedings continued on until February 3, 1992, when the Personnel Board issued a decision reinstating DeVito

and transforming his termination into a 30–day suspension. The Board, however, denied DeVito backpay and informed him that he would be discharged if he attempted to recoup backpay or benefits. Finally, the reinstatement notice required DeVito to submit to an examination by a member of the Park District's medical staff.[2]

DeVito was examined by Dr. Henry Moss, who confirmed that he was unable to perform the duties of a B & C laborer—as DeVito had contended from the outset. The Personnel Board met on October 13, 1992 to discuss Dr. Moss' evaluation. At the October 13 meeting, DeVito informed the Board that he was willing and able to return to the light-duty work that he had performed from 1985 to 1989. The Board then voted to discharge DeVito.

## II.

DeVito contends that his second (1992) discharge was due to his disability and thus in violation of the ADA. The defendants argue that the ADA does not apply because DeVito was not an employee of the Park District in 1992. Rather, the defendants assert that DeVito was a former employee who was in the process of appealing his 1989 termination.

■ DeVito's status on October 13, 1992 is of prime importance in this case because of the timing of the passage of the ADA. The employment provisions of the ADA became effective on July 26, 1992. *See Graehling v. Village of Lombard*, 58 F.3d 295, 296 (7th Cir.1995); 42 U.S.C. § 12111 note. The ADA is not retroactive. *Vande Zande v. State of Wisconsin Dept. of Administration*, 44 F.3d 538, 545 (7th Cir.1995). Thus, the original decision to terminate DeVito in 1989 is not actionable under the Act. If in October 1992 DeVito was simply a former employee contesting the original (1989) decision to dis-

---

1. The Personnel Board is composed of two Park District commissioners and the Park District's Superintendent of Employment.

2. The reinstatement notice states in relevant part:

Your reinstatement is further subject to the evaluation and recommendation of the Medical Services Department, Chicago Park District, which shall provide a report to the Personnel Board with respect to your proposed job assignment and prescribed duties upon reinstatement.

charge him, he cannot claim the protection of the ADA because the alleged discriminatory discharge would have occurred in 1989, three years before the ADA went into effect. The pendency of DeVito's appeal to the Personnel Board would not transform the 1989 discharge into a violation that continued into 1992.[3] *See Collins v. United Air Lines*, 514 F.2d 594, 596 (9th Cir.1975) (denial of request for reinstatement was not "a new and separate discriminatory act or [an act that] somehow rendered the initial violation, if any, a continuing one."); *cf. Delaware State College v. Ricks*, 449 U.S. 250, 261, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (statute of limitations on Title VII claims begins to run when decision to discharge is made and is not tolled during pendency of grievance proceedings); *International Union of Electrical, Radio and Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (same).

■ We conclude, however, that DeVito was an employee of the Park District at the time of the October 1992 discharge. For proof of DeVito's status, we need look no further than the Personnel Board's own decision of February 3, 1992, which reinstated DeVito as an employee. The reinstatement letter is strong evidence that on February 3, 1992, DeVito was once again an employee of the Park District. The defendants argue that the reinstatement was not final on February 3, 1992 but conditional. Indeed, the reinstatement letter does appear to impose the condition that DeVito undergo a medical evaluation. But DeVito submitted to a medical evaluation, so whatever his status may have been on February 3, 1992, it seems clear that he was officially reinstated after Dr. Moss examined him. We note that the letter does not condition DeVito's reinstatement on the medical exam having any particular result.

The defendants point to language in the letter stating that DeVito's reinstatement was subject to the "recommendation" of the Medical Services Department concerning De-Vito's job assignment. The only recommendation given by Dr. Moss was that DeVito was not capable of working as a B & C laborer. Thus, the defendants contend that no "recommendation" was given concerning DeVito's new job assignment, so he was not reinstated. We disagree. The only dispute between DeVito and the Park District was whether DeVito was capable of performing the duties of a B & C laborer. The defendants never contended that DeVito was incapable of performing light-duty work; on the contrary, they believed that he was malingering and could still perform heavy labor. The terms of the reinstatement simply required DeVito to return to his B & C laborer position if Dr. Moss deemed him capable. Dr. Moss, however, confirmed that DeVito was truly injured. If anything, the results of Dr. Moss' examination show that the Park District was wrong to accuse DeVito of malingering and thus should have returned him to the light-duty job that he performed (and there is no contention that he performed other than ably) from 1985 to 1989.

In addition, the defendants contend that DeVito was not an employee in October 1992 because even though he was officially reinstated, he had not yet returned to work, so no employer-employee relationship existed between him and the Park District. The fact that DeVito had not yet returned to work, however, does not alter our analysis. After he was examined by Dr. Moss, DeVito undoubtedly expected to be assigned to a position (where he would start receiving pay) immediately. We believe his status at that time was most comparable to that of a worker preparing to return from unpaid leave. However, we found no published opinions addressing the question of whether an individual so situated qualifies as an employee. We suspect that this dearth of precedent is due to the commonsense understanding that an employee on unpaid leave is still an "employee" in that he is still under the control of his employer (*e.g.*, he could still be fired or demoted).[4] The few cases that we did find

3. The defendants apparently argue that even though the Personnel Board issued a decision on February 3, 1992, DeVito's appeal was still pending before the Board in October 1992 because he had not yet received a job assignment.

4. In a related line of cases concerning the distinction between an "employee" and an indepen-

assume without discussion that workers returning from unpaid leave are entitled to the protection of anti-discrimination laws. *See Nashville Gas Co. v. Satty,* 434 U.S. 136, 143–45, 98 S.Ct. 347, 352–53, 54 L.Ed.2d 356 (1977) (Title VII prevents employers from denying seniority benefits to women returning from unpaid maternity leave); *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d 1536, 1538 (11th Cir.1987) (employer violated Title VII by failing to give employee returning from maternity leave a position substantially similar to her previous job). Thus, because DeVito submitted to a medical examination, thereby fulfilling the only condition attached to his reinstatement, his status was that of an employee of the Park District in October 1992 even though he had not yet returned to work. Accordingly, we conclude that the district court's decision to grant summary judgment to the defendants on the ground that DeVito was not protected by the ADA was incorrect.[5]

### III.

■ The Park District and the Personnel Board offer several arguments for why each of them is not a proper defendant in this suit. First, the Park District argues that it is not subject to suit under the ADA because the only act that it committed—the initial termination of DeVito—took place in 1989, before the ADA was enacted. The 1992 discharge was ordered not by the Park District but by the Personnel Board. However, the ADA imposes respondeat superior liability on an employer for the acts of its agents. *EEOC v. AIC Security Investigations, Ltd.,* 55 F.3d 1276, 1281 (7th Cir.1995); *cf. Williams v. Banning,* 72 F.3d 552, 553

(7th Cir.1995). The Personnel Board adjudicates employment disputes on behalf of the Park District, and the Board is composed entirely of Park District administrators: two Park District commissioners and the Park District's Superintendent of Employment. Even assuming that the Personnel Board is an entity separate and distinct from the Park District, the Board is an agent of the Park District, and under the ADA the Park District is liable for the Board's actions.[6]

■ Next, the Personnel Board contends that it is a "quasijudicial body" that is immune from suit under the ADA. However, the cases cited by the Board (*e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)) concern suits against members of administrative boards in their individual capacities. DeVito did not sue any of the members of the Personnel Board in their individual capacities; rather, he sued the Board in its official capacity.[7] The only immunities available in an official capacity suit are those that may be asserted by the governmental entity itself (*e.g.,* Eleventh Amendment immunity or sovereign immunity). *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). The relevant governmental entity in this suit is the Park District, which is a municipal corporation organized under the laws of Illinois. *See In re Vrdolyak,* 137 Ill.2d 407, 148 Ill. Dec. 243, 560 N.E.2d 840, 842 (1990); *Gill v. Chicago Park District,* 85 Ill.App.3d 903, 41 Ill.Dec. 173, 407 N.E.2d 671, 672 (1980). Municipal corporations do not possess sovereign immunity or Eleventh Amendment immunity from suit. *Will v. Michigan Dept. of State*

---

dent contractor, we have stated that courts should look to the economic realities of the relationship and, most importantly, to the degree of control exercised by the employer. *Rogers v. Sugar Tree Products, Inc.,* 7 F.3d 577, 581 (7th Cir.1993); *Knight v. United Farm Bureau Mut. Ins. Co.,* 950 F.2d 377, 378 (7th Cir.1991). Here, the Park District had complete control over DeVito's conditions of employment, and the defendants do not argue that DeVito was an independent contractor rather than an employee.

5. Because we hold that DeVito was an employee of the Park District in October 1992, we need not address the contention that he was a qualified

applicant for employment within the meaning of the ADA.

6. If we were to accept the Park District's argument, every employer could disclaim liability under the ADA by asserting that its hiring committee, rather than the employer itself, made the challenged decision.

7. Accordingly, we need not decide whether the members of the Board would be entitled to immunity under *Butz* had they been sued personally.

*Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Monell v. Dept. of Social Services,* 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978). Thus, because the Park District is not entitled to Eleventh Amendment immunity, the Personnel Board is not immune from suit.

■ Finally, the Personnel Board argues that it does not qualify as an "employer" under the ADA and thus is not subject to suit under the Act. The plain language of the ADA defines employer as "a person engaged in an industry affecting commerce who has 25 or more employees ... and any agent of such person." 42 U.S.C. § 12111(5)(A).[8] Because (as discussed previously) the Board is an agent of the Park District, it seems at first glance that the Board should be subject to suit. But, as we explained in *AIC Security,* the language designating "any agent of such person" as an employer was intended to impose respondeat superior liability on employers for the acts of their agents—not to create liability for every agent of an employer. *AIC Security,* 55 F.3d at 1281. Agents are liable under the ADA only if they "otherwise meet the statutory definition of [an] 'employer.'" *Id.* at 1282. For example, an agent of an employer is not liable under the ADA unless it has the requisite number of employees and is engaged in an industry affecting commerce. *See id.* at 1281. The record does not reflect whether the Personnel Board had 25 employees and otherwise qualifies as an employer under the statutory definition. Thus, on remand, the district court shall conduct further inquiry to determine the status of the Personnel Board.

In conclusion, DeVito was an employee of the Park District when he was terminated for the second time on October 13, 1992. Therefore, summary judgment should not have been granted in favor of the defendants, and we reverse and remand for a trial on whether the October 1992 discharge was motivated by DeVito's disability. In addition, on remand the district court shall determine whether the Personnel Board qualifies as an employer under the ADA. Regardless of the status of the Personnel Board, however, the suit may proceed against the Park District.

REVERSED AND REMANDED.

---

**8.** The ADA covers employers who, during the first two years after the Act became effective, had 25 or more employees. After these two years elapsed, the ADA became applicable to employers with 15 or more employees. *See id.* Because DeVito's termination occurred within two years after the effective date of the ADA, the 25–employee requirement applies to this case.