Rudolph **WINFREY**, Plaintiff,

v.

**CITY OF CHICAGO**, Defendant.

No. 96 C 1208.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 9, 1997.

Tammy Jo Lenzy, Law Office of Tammy J. Lenzy, Oak Park, IL, for Rudolph Winfrey.

Denise J. King, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, Barbara Louise Anderson, Susan S. Sher, George Ronald Thomson, City of Chicago, Law Dept., Chicago, IL, Barbara Smith, Chicago, IL, for City of Chicago.

## MEMORANDUM & ORDER

MANNING, District Judge.

Plaintiff, Rudolph Winfrey ("Winfrey"), filed this two-count complaint against the defendant, the City of Chicago ("City"), alleging that the City discriminated against him on the basis of his disability in violation of Titles I and II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131–34, and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. The City submits this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) arguing that the court should: (1) dismiss Winfrey's claim under Title I of the ADA because the complaint does not permit a reasonable inference that the City discriminated against him before Title I of the ADA became effective; (2) dismiss all of Winfrey's claims because the complaint does not permit a reasonable inference that he satisfied the statute of limitations requirements of either statute; (3) dismiss Winfrey's claim under the Rehabilitation Act because he failed to allege that the program or activity, to which he purportedly was excluded, receives federal financial assistance; and (4) strike Winfrey's claims for punitive damages because none of the pertinent statutory provisions provide for such an award from a municipality. For the reasons set forth below, the court grants the City's motion with respect to Winfrey's claim under the Rehabilitation Act and his claims for punitive damages but denies the City's motion with respect to its assertion that Winfrey's claims are time-barred.

## BACKGROUND

Following are the facts as set forth in Winfrey's complaint. The City hired Winfrey in 1971 as a laborer in the Department of Streets and Sanitation. After suffering from an on-the-job injury and a latent eye condition, retinitis pigmentosa, Winfrey began to lose his eye sight in 1977. In 1986, Winfrey was diagnosed as legally blind.

In response to Winfrey's request to the City for a reasonable accommodation for his condition, the City reassigned Winfrey in 1987 or 1988 as a laborer with special events. Winfrey continued to satisfactorily perform his duties. In June 1991, Winfrey fell off a twenty-five foot ledge and broke his leg. He was subsequently placed on "duty disability" until the City's physician, on December 16, 1991, released Winfrey to return to work. Although the City attempted to place Winfrey on involuntary medical leave at this time, the City ultimately assigned Winfrey to work on the garbage trucks. Apparently because of difficulties with this assignment, Winfrey requested vacation time which the City granted while it attempted to identify an alternative assignment for him.

Before his return from vacation, the City sought to discharge Winfrey for alleged absenteeism even though it had never provided him with any prior written or verbal warnings regarding his attendance. Winfrey asserts that the City seldom discharged or disciplined non-handicapped employees, even when subject to repeated warnings for attendance violations. Winfrey has not received any information explicitly revealing the ultimate outcome of these charges. On the one hand, the City did not allow Winfrey to return to work but returned him to status on unpaid leave, so that he lost his salary and benefits as an active employee. On the other hand, the city informed Winfrey that he was still an employee and assured him that it was seeking a new assignment for him. In response, Winfrey submitted a letter and an updated resume to the City. The City told Winfrey to wait for its call.

In August 1991, Winfrey filed a charge with the Illinois Department of Human Rights ("IDHR") alleging that the City discriminated against him on the basis of his

disability.[1] In early 1994, the City again contacted Winfrey and directed him to report for a physical examination to return him to active duty. Winfrey completed the physical and was released to return to work on March 8, 1994. Winfrey and his attorney then met with a representative of the Department of Streets and Sanitation, Walter Bresnahan. At this meeting, Winfrey was told to report to work the following day. However, when Winfrey reported to the Department, he was told that there was no work for him. On March 17, 1994, Winfrey filed a charge with the Equal Employment Opportunity Commission ("EEOC").

After receiving notice from the EEOC of his right to sue, Winfrey filed the instant two count complaint against the City. In Count I, Winfrey alleges that the City violated both Title I and Title II of the ADA "in one or all of the following ways": (1) refusing to permit Winfrey to return to his position as a laborer even though he satisfactorily performed in that position for over five years since legally blind; (2) limiting, segregating and classifying Winfrey as unable to work; and/or (3) failing to investigate whether a reasonable accommodation for Winfrey's condition is possible. In Count II, Winfrey alleges that the City violated section 504 of the Rehabilitation Act by denying him the right to return to work in 1992 and every day thereafter solely on the basis of his disability. In particular, Winfrey alleges that: (1) the disciplinary charge seeking termination for absenteeism was instituted solely on the basis of his disability; and (2) the City discriminated against him by refusing to reassign or restructure an assignment for him.

The City submits the instant motion to dismiss both counts. First, the City asserts that all of Winfrey's claims are time-barred. In support, the City argues that the alleged discriminatory act on its part would have occurred in April or May of 1992 when the City filed charges against Winfrey for absenteeism and subsequently removed him from active duty. Because Title I of the ADA was

not in effect at this time, the City's conduct could not have violated this provision. In addition, the City argues that both claims under the ADA would be time-barred because Winfrey did not file with the EEOC until more than 300 days later in 1994. The City also argues that Winfrey's claim under the Rehabilitation Act would be time-barred because he did not file his complaint until more than two years following the alleged act of discrimination. In the alternative, the City also moves to dismiss Winfrey's claim under the Rehabilitation Act because he failed to properly allege that the purported discrimination was related to a program or activity receiving federal financial assistance. Finally, the City argues that Winfrey's claim for punitive damages should be stricken because neither statute provides such damages against a municipal corporation.

## DISCUSSION

The court may not grant a motion to dismiss for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). All well-pleaded facts are accepted as true, and the court will view those allegations, and reasonable inferences therefrom, in a light most favorable to the plaintiff. *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Therefore, "a suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir.1995).

### I. *Time-bar.*

Each of the City's arguments that Winfrey's claims are time-barred depends upon its assertion that the only distinct act of discrimination alleged by Winfrey occurred in April or May of 1992, when the City refused to permit Winfrey to return to his

---

1. The City has attached a copy of Winfrey's charge as an exhibit to its motion. Documents specifically referred to in the complaint may be properly considered on a motion to dismiss. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,

987 F.2d 429, 431 (7th Cir.1993). Winfrey filed this charge on August 31, 1992 in which he alleges that the City discriminated against him on the basis of his blindness by continuing to fail to return him to active duty.

former assignment with the Department of Streets and Sanitation. According to the City, Winfrey's complaint itself alleges that the City discriminated against him by refusing to return him to some active duty with the Department since April 1992. The City further argues that any subsequent refusal to reinstate him to an assignment in March 1994 was merely a consequence of that prior position. The City asserts that, if it only discriminated against Winfrey in April 1992, then Winfrey failed to file a charge with the EEOC or the federal court within the required statute of limitations of the Rehabilitation Act or either Title of the ADA. Moreover, the City argues that its conduct in April or May 1992 could not have violated Title I of the ADA because the subchapter was not yet in effect.

Winfrey responds that his complaint is based upon the City's alleged refusal to reinstate him in March 1994, well after the effectiveness of Title I of the ADA and within the limitations period of both statutes. Winfrey further argues that the City's refusal to reinstate him in March 1994 constitutes a distinct and independent act of discrimination from the City's refusal to reinstate him in 1991 because that refusal was not in response to an appeal or request for reconsideration of that prior decision.

### A. *Title I of the ADA.*

#### 1. *Statute of Limitations.*

To pursue a claim under Title I of the ADA, a plaintiff must file an administrative charge with the EEOC prior to filing a claim in federal court on the same matter. 42 U.S.C. § 12117. Because Illinois is a deferral state, a plaintiff must file the charge within 300 days of the alleged discriminatory act being challenged. *Gilardi v. Schroeder*, 833 F.2d 1226, 1230–31 (7th Cir.1987). Otherwise, the cause of action is time-barred. *Id.* According to the complaint, Winfrey filed his charge with the EEOC on March 17, 1994.

To determine the operative date to begin the limitations period, the court must first identify the "unlawful employment practice" challenged by the complaint. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). As the City argues, Winfrey's complaint may be fairly read to allege that the City discriminated against him by first refusing to return him to work in April 1992. In Count I, Winfrey alleges that the City discriminated against Winfrey by conduct that included "not allowing Winfrey to return to his position as a laborer, a position that Winfrey continued to satisfactorily perform, with or without accommodation for over five years after he was diagnosed as legally blind." Complaint, ¶ 60(a). However, the complaint also clearly alleges that the City discriminated against Winfrey through it refusal to reinstate him to an assignment in March 1994. Moreover, Count I provides contingent language that the City discriminated against Winfrey because of either one or all of the listed ways. Therefore, the complaint may also fairly be read to state that the City discriminated against Winfrey because it refused to reinstate him *and* subsequently failed to reasonably accommodate him by providing an alternative assignment by March 1994. In fact, the EEOC charge on which this compliant is based only refers to the City's alleged refusal to reinstate Winfrey in 1994.

For purposes of measuring the limitations period, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Ricks*, 449 U.S. at 258, 101 S.Ct. at 504. Thus, an employment event that is merely an effect of a prior employment decision usually will not constitute a separate and distinct discriminatory act. Instead, the statute of limitations period begins when the plaintiff is first notified of the original discriminatory decision. *Id.* A subsequent decision is a mere consequence if it is both connected to and implied by the first decision.[2] *Lever v. Northwestern University*, 979 F.2d 552, 556 (7th Cir.1992).

---

**2.** For instance, if a teacher is denied tenure but retains her position and salary for a set subsequent period of time, the alleged discrimination will have occurred when she was denied tenure and not when she later lost her employment. *Ricks*, 449 U.S. at 257, 101 S.Ct. at 503.

Accordingly, because an "employer's decision not to undo a discriminatory decision is not a fresh act of discrimination," the result of an internal appeal procedure of an employment decision is considered a mere consequence of that original appealed decision that cannot form a distinct act of discrimination. *Id.; Ricks,* 449 U.S. at 260–61, 101 S.Ct. at 505.

Similarly, denials of request for reinstatement generally do not constitute separate acts of discrimination from the original discharge. *See Mitilinakis v. City of Chicago,* 735 F.Supp. 839, 841–42 (N.D.Ill.1990); *e.g., Collins v. United Air Lines, Inc.,* 514 F.2d 594, 596–97 (9th Cir.1975). By asking for reinstatement, the discharged employee is really " 'litigating the unfairness of the original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer.' " *Collins,* 514 F.2d at 596 (*quoting NLRB v. Textile Machine Works,* 214 F.2d 929, 932 (3d Cir.1954)). Otherwise, a plaintiff may circumvent the limitations period merely by requesting reinstatement. *Mitilinakis,* 735 F.Supp. at 841. But the denial must still be implied by a previous employment decision. *See Lever,* 979 F.2d at 556; *cf. Mitilinakis,* 735 F.Supp. at 841 (refusal to reinstate implied by prior decision that plaintiff was not entitled to automatic reinstatement). If the employer's decision to remove an employee was "ad hoc," and did not preclude future consideration of the employee's return, then the employer's later refusal to reinstate the employee may constitute an independent discriminatory act from his removal. *Webb v. Indiana Nat'l Bank,* 931 F.2d 434, 437 (7th Cir.1991). In addition, the employee must have known or at least should have known of this decision. *Id.; see Smith v. United Parcel Service, Inc.,* 65 F.3d 266, 268 (2nd Cir. 1995) (limitations period does not begin until employee receives definite notice of official position of employer).

Usually, the dates on which an adverse employment decision was made or communicated to an employee is a question of fact. *Pacourek v. Inland Steel,* 858 F.Supp. 1393, 1398 (N.D.Ill.1994). Because a motion to dismiss focuses on the complaint, the court will only dispose of claims because of a statute of limitations defense if the plaintiff has "plead facts that show that his suit is time-barred." *Tregenza v. Great Am. Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993). Therefore, the question before this court is whether the court may not infer facts, consistent with Winfrey's alleged facts, that would demonstrate that the City's March 1994 refusal to return Winfrey to an active assignment constituted an independent act of discrimination.

The City argues that the March 1994 refusal to reinstate Winfrey was a mere consequence of its previous April 1991 refusal to return Winfrey to work. Through both employment decisions, the City prohibited Winfrey from returning to active duty with the Department of Streets and Sanitation. Through both decisions, it is clear that the City would not return Winfrey to his prior position on the garbage trucks and that the City had not located an alternative assignment that was vacant and it considered suitable. Finally, both decisions placed Winfrey on leave of absence and thereby denied him the salary and benefits attendant to active employment. Consequently, the City asserts that the March 1994 refusal could only constitute a denial of a request for reconsideration of its prior April 1991 decision to keep Winfrey on unpaid leave.

However, the allegations set forth in the complaint permit a reasonable inference that the City's March 1994 refusal to return Winfrey to work constituted an independent act of discrimination. Although the complaint alleges that the City made an employment decision in April 1991 to place Winfrey on leave, it does not indicate that the City made any sort of unequivocal decision that it would not be able to accommodate Winfrey. According to the complaint, the City never implied that it would not return Winfrey to active employment, but rather stated that it was searching for an alternative position for him. Of course, it is unclear whether the City made similar statements following its March 1994 refusal to return to work. However, even if the City's March 1994 refusal similarly promised efforts to accommodate, the allegations still present anything but an

unequivocal discharge from active duty in 1991. *See also Verschuuren v. Equitable Life*, 554 F.Supp. 1188, 1190 (S.D.N.Y.1983) (ambiguous notice of termination is insufficient to begin running of statute of limitations). A promise to locate an alternative position for an employee does not necessarily imply that the employee's subsequent requests for alternative positions will prove futile. Winfrey did not have a right to demand transfer to an assignment that was not vacant, *Gile v. United Airlines. Inc.*, 95 F.3d 492, 498 (7th Cir.1996) (ADA only requires employer to reassign disabled employee to a vacant position), or to remain on unpaid leave indefinitely until a position for which he would be "qualified" became available. *See Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1187 (6th Cir.1996) (ADA does not require employer to keep employee on unpaid leave indefinitely until alternative position becomes available). But the complaint alleges that the City assured Winfrey that he remained its employee, and asserted that it was seeking a reasonable accommodation by locating another position for him. These allegations permit an inference that the City's conduct in April 1991 would reasonably invite subsequent inquiries and applications concerning alternative assignments with the Department. In fact, they permit an inference that the City would provide Winfrey with priority status for any subsequently vacant assignments for which he was qualified.

The City responds that Winfrey's August 1991 discrimination charge with IDHR demonstrates that the March 1994 refusal to reinstate Winfrey was not an independent act of discrimination but a mere consequence of previous discrimination. The City argues that, regardless of the City's proffered position during this time, Winfrey's 1991 discrimination charge reveals that he recognized that the City would not return him to work. Even assuming that Winfrey had correctly deduced that the City had violated his statutory rights in August 1991, the allegations still permit a reasonable inference of subsequent independent discriminatory conduct. At the most, Winfrey's IDHR charge implies that the City's failure to reinstate Winfrey in August 1991 discriminated against Winfrey because the City could have reasonably accommodated Winfrey by either (1) restructuring his old assignment, or (2) transferring Winfrey to another assignment for which he was qualified, with reasonable accommodations, that had since become vacant. But according to the allegations, the City assured Winfrey that it was seeking another assignment for him. Although the complaint does not specify if the City continued to communicate this position, it also does not reveal that the City ever indicated the contrary other than by failing to produce any concrete offers of employment.

Taking Winfrey's allegations as true, it is reasonable to infer at this stage in the proceedings that the City not only continued to consider Winfrey for subsequently vacant positions, but it also conferred him with priority status for any such positions for which he would be qualified. Thus, any previous failure to provide Winfrey with a vacant position may be reasonably characterized as "ad hoc." The fact that an employer discriminated against an employee in the past does not necessarily prevent an employee from complaining about subsequent discriminatory conduct. *Webb*, 931 F.2d at 437. The complaint implies that the City either failed to attempt to identify such positions or erroneously concluded that he was not qualified for vacant assignments because it could not reasonably modify those qualifications. If this inference proves true, then the City's failure to reinstate Winfrey to subsequently vacant assignments would be more akin to the denial of an application for a new position rather than reconsideration of a prior refusal for reinstatement. *See also Jablonski v. Chas., Levy Circulating Co.*, 888 F.Supp. 84, 86 (N.D.Ill.1995) (employer's denial of removed employee's applications for new positions constitute independent acts of discrimination); *Cf. Silk v. City of Chicago*, 1996 WL 312074, at *8 (N.D.Ill., June 7, 1996) (only reasonable inference from employee's transfer to new assignment was that transfer constituted employer's accommodation for disability). Consequently, if assignments for which Winfrey was qualified had since opened up, the City's position would render its denial of Winfrey's later request to return

to work a discrete act of discrimination.[3] *Cf. Inda v. United Air Lines. Inc.*, 565 F.2d 554, 562 (9th Cir.1977) (promise to grant plaintiff priority status if policy removing plaintiff was eliminated as discriminatory added additional factor of unfairness to subsequent refusal to reinstate plaintiff to render it a discrete act).

Even if the record established that the City had reached a decision in 1991 to not return Winfrey to work, the complaint still permits an inference that the City's March 1994 refusal to return Winfrey to work constituted an independent act of discrimination. If an employer reinstates a discharged employee but then immediately removes that employee, that subsequent removal would constitute an independent act of discrimination from the original discharge. *DeVito v. Chicago Park Dist.*, 83 F.3d 878, 880 (7th Cir.1996) (defendant's removal of plaintiff after voting to reinstate him constituted distinct act of discrimination). In fact, the subsequent removal would constitute a separate discriminatory act even if the employer never permitted the employee to physically return to work or earn any salary. *See id.* The complaint alleges that the City directed Winfrey to take a physical in order to return to work, and that Winfrey passed this physical. The complaint further alleges that Winfrey was told at a meeting with a representative for the City that he should report to work. It is reasonable to infer that the complaint refers to directions from some agent of the City. If the evidence reveals that the City had effectively returned Winfrey to work, then the City's subsequent decision to again remove Winfrey may constitute an independent act of discrimination.

2. *Whether Discrimination Occurred Prior to Effective Date of Title I of the ADA.*

■ Title I of the ADA became effective against employers, including the City of Chicago, on July 26, 1992. 42 U.S.C. § 12111 note. As a general matter, the ADA does not apply retroactively to acts of discrimination that occurred prior to this date. *Graehling v. Village of Lombard*, 58 F.3d 295, 297. The *Ricks'* principle of determining the operative date of discrimination for purposes of the statute of limitations applies equally to the question of whether the discrimination occurred after the effective date of the ADA. *See id.*

As explained above, Winfrey's allegations state a potential act of discrimination distinct from the City's prior refusal to reinstate him in April 1991. Assuming the allegations as true, it is reasonable to infer that the City's April 1991 decision only precluded Winfrey from returning to his prior assignment on the garbage trucks or other assignments that were vacant at that time. Because the allegations do not indicate any unequivocal decision by the City to prevent Winfrey from returning from unpaid leave, the complaint permits a reasonable inference that the City's later failure to return Winfrey to a subsequently vacant assignment was not a necessary consequence of its April 1991 decision but a discrete act of discrimination.[4]

---

**3.** In its brief, the City also argues that, through his motion submitted to the Illinois Human Rights Commission ("IHRC") to stay the proceedings on his claim under Illinois law, Winfrey conceded that the City's April 1992 refusal and its March 1994 refusal to reinstate him constitute the same act of discrimination. In his motion, Winfrey stated that his claims before each tribunal arose from "substantially the same facts and circumstances." Winfrey's Illinois claim revolves around the City's April 1991 refusal to reinstate him and its failure to offer any alternative assignment during the subsequent three months.

But it is not self-evident that Winfrey's motion before the IHRC argues an inconsistent position. Although the City's conduct in April 1991 and March 1994 are certainly related, this does not necessarily imply that one was the consequence of the other. The City does not appear to assert that Winfrey's motion to stay the IHRC proceedings should judicially estop him from arguing that the 1994 refusal to reinstate him constitutes a separate act of discrimination from its failure to reinstate him in 1991. Therefore, Winfrey's allegedly inconsistent argument before that tribunal provides, at best, a factual dispute not amenable to disposition at this stage in the proceedings.

**4.** Neither does Winfrey's factual allegation that the City raised its absenteeism charge solely on the basis of his disability undermine this inference. Because the complaint does not indicate any formal outcome of the City's charge to terminate Winfrey, the court cannot characterize the City's later refusal to reinstate Winfrey as a mere consequence of this charge. While this allega-

*See also id.* (discharge may be so tentative to render later decision on whether to let initial act hold sway as relevant discriminatory conduct). Even Winfrey's discrimination charge with IDHR only alleged discrimination after the City had still failed to return him to a position at least one month following July 26, 1991. Thus, regardless of whether the City's March 1994 refusal was a consequence of some earlier employment decision, the allegations permit an inference that the City did not reach that discriminatory decision until after Title I became effective.

For the reasons stated above, the City's motion to dismiss is denied with respect to Winfrey's claims under Title I of the ADA.

### B. *Statute of Limitations under Title II and the Rehabilitations Act.*

The City similarly argues that Winfrey's claims under Title II of the ADA and section 504 of the Rehabilitation Act must fail because Winfrey fails to allege a separate violation that occurred within either provisions's statutes of limitations period. As an initial matter, the City asks the court to revisit its prior determination in *Dertz v. City of Chicago,* 912 F.Supp. 319 (N.D.Ill.1995), that Title II of the ADA does not require the exhaustion procedures of Title I. In *Dertz,* this court reasoned that, because the Department of Justice's regulations promulgated under Title II expressly adopt the substantive requirements, but do not reference the procedural requirements, the DOJ must not have intended to impose those procedural requirements against claims under Title II.[5] *Id.* at 326 (citing the reasoning of *Petersen v. Univ. of Wis. Bd. of Regents,* 818 F.Supp. 1276 (W.D.Wis.1993)). The City responds that the express terms of section 107 of the ADA

require that the procedures set forth in Title VII of the Civil Rights Act of 1964, including its exhaustion requirements, apply to any claim for employment discrimination under the ADA. In particular, section 107(a) of the ADA does not explicitly restrict this adoption to employment claims pursued under Title I.[6] The City further implies that it is illogical or inconsistent to interpret the ADA to permit public employees to raise an employment discrimination under Title II directly in court but require private employee to first present their discrimination claims to the EEOC.

The City's arguments do not convince the Court that it erred in its prior interpretation. With regard to the language of section 107, the City ignores the fact that section 107(a) applies to the "powers, remedies and procedures *this subchapter* [Title I] provides" to a person claiming discrimination concerning employment. In contrast, the enforcement provision for Title II, section 203, provides that the remedies, procedures, and rights of section 794a of the Rehabilitation Act present the administrative scheme *"this subchapter* [Title II] provides" to persons alleging a violation under Title II. 42 U.S.C. § 12133. The parallel structure of these enforcement provisions provides a specific enforcement scheme for claims that arise under each subchapter. In turn, this structure indicates an intent that Title I provide the procedural requirements of Title VII for persons bringing a claim pursuant to that subchapter, and that Title II provides the procedural requirements of the Rehabilitation Act to persons bringing claims pursuant to that subchapter. *See Silk,* 1996 WL 312074 at *13. As the City argues, Congress' intent is somewhat ambiguous in light of the language of section 107(a) referring to any employment claim. However, section 107(a) specifies employ-

---

tion does indicate that the City wished that it could get rid of Winfrey, it does not establish as a matter of law either if the City ever decided to not return Winfrey to active employment or, assuming that it made such a decision, when it occurred.

5. In fact, the regulations promulgated under Title II provide a plaintiff with the option of first pursuing administrative remedies or proceeding directly to court. 28 C.F.R. § 35.172, App. A; *see* 28 C.F.R. § 35.170; *Dertz,* 912 F.Supp. at 325.

6. Section 107(a) of the ADA provides:

"The powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."
42 U.S.C. § 12117(a).

ment claims brought pursuant to either the statute or the regulations promulgated under Title I.[7] This reference to employment claims under the statute or regulations promulgated under Title I further undermines any clear intent on the part of Congress to subject employment claims under Title II to the exhaustion requirements of Title I. *See id.; Wagner v. Texas A & M University*, 939 F.Supp. 1297, 1310 (S.D.Tex.1996). Consequently, the court finds that the language and structure of the ADA indicates an intent to impose the procedural requirements of Title VII only to employment claims pursued under Title I.

■ Although the logic of policy distinguishing between the requirements for public and private employees may be subject to debate, the court does not believe that it is so patently absurd to override a more consistent reading of both the statute and regulations promulgated thereunder. By permitting public employees to raise their claims for employment discrimination under Title II as well as Title I of the ADA, this court's interpretation of the statute indicates that public employees may bypass the administrative procedures required under Title I by pursuing their employment claims under Title II. In arguing for the absurdity of the distinction, the City focuses on the identity of the employees. However, the administrative filing procedures and time requirements of the discrimination statutes generally serve the purpose of providing adequate notice to the employer that the employee is aggrieved and affording an opportunity for settlement. *See Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). Therefore, the proper focus is more likely to relate to the nature of the employers rather than the employees. Congress may have considered that such warning or opportunities would not be as necessary for public employers. Regardless, the City provides no argument as to why this court's interpretation of Title II is so absurd as to require a different construction of the statute. Accordingly, the

court reaffirms its prior holding that Title II of the ADA does not adopt the exhaustion requirements of Title I for purposes of employment discrimination claims.

■ If a federal civil rights statute does not impose its own specific statute of limitations, then a court should borrow the statute of limitations from the applicable state governing personal injury suits. *Cheeney v. Highland Community College*, 15 F.3d 79, 81–82 (7th Cir.1994). Accordingly, for purposes of Winfrey's claims under Title II of the ADA and the Rehabilitation Act, Illinois' two year personal injury statute of limitations applies. *See id.* at 81 (applying two year limitations period to claim under section 504 of the Rehabilitation Act); *see also* Ill. Stat. ch. 110, ¶ 13–202 (1992).

For the reasons set forth in the preceding section, the complaint creates a permissible inference that the City's March 1994 refusal to return Winfrey to work was not merely a consequence of the City's refusal to reinstate Winfrey in 1991 but may constitute an independent act of discrimination. Winfrey filed the instant complaint with this court in February 1996, within two years of March 1994. Therefore, the court denies the City's motion to dismiss Winfrey's claims under either Title II of the ADA or the Rehabilitation Act because they are time-barred.

II. *Adequacy of Allegations of Violation of Rehabilitation Act.*

■ The City alternatively argues that the court should dismiss Winfrey's claims under Count II of his complaint because it fails to properly allege that the discrimination was related to a "program or activity" receiving federal financial assistance. Section 504 of the Rehabilitation Act provides, in pertinent part:

"No otherwise qualified individual with a disability in the United States ... shall, solely by reasons of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

---

7. Title II of the ADA does not explicitly regulate claims for discrimination in employment, but only discrimination in the participation in or the provision of benefits from a program or activity. *See* 42 U.S.C. § 12132. Employment claims

arise from regulations promulgated by the DOJ pursuant to Title II that identify employment as such a program or activity. 28 C.F.R. § 35.140(a); *see Ethridge v. Alabama*, 860 F.Supp. 808, 812 (M.D.Ala.1994).

discrimination *under any program or activity receiving federal financial assistance . . .*"

29 U.S.C. § 794. In his complaint, Winfrey alleges that "the City is a recipient of federal financial assistance and therefore, its programs and activities, including the employment practices of the Department of Streets and Sanitation, are subject to the nondiscrimination on the basis of disability provisions of Section 504." ¶ 64. The City argues that this pleading fails to allege that the program or activity from which Winfrey was excluded is regulated under the Rehabilitation Act. Instead, it merely asserts that the relevant Department's employment program is regulated by the Rehabilitation Act because the City of Chicago receives federal financial assistance.

■ Section 504 is program specific: "It proscribes discrimination only with respect to 'program' or 'activities' receiving federal financial assistance." *Foss v. City of Chicago,* 817 F.2d 34, 34–35 (7th Cir.1987). In 1988, Congress amended the definition of "program or activity" to broaden the reach of the section 504 to "all the operations" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government" that receives federal funding. § 794(b)(1)(A). Therefore, all the operations of a department or similar entity receiving federal financial assistance are subject to regulation. *Schroeder v. City of Chicago,* 715 F.Supp. 222, 225 (N.D.Ill.1989), *aff'd,* 927 F.2d 957 (7th Cir.1991). However, every program of an entire governmental entity, such as a municipality, is not regulated because some other program or division receives financial assistance. *Schroeder,* 927 F.2d at 962. Rather, section 504 continues to regulate each department, agency or similar instrumentality of the local government only if that instrumentality receives federal financial assistance. *Id.*

■ Winfrey's complaint only alleges that the City receives federal financial assistance. Even in his brief, the plaintiff declines to explicitly allege that any department or division that operated the employment program at issue, other than the City of Chicago, itself, received federal assistance. The fact that the "program or activity" that allegedly denied equal access to benefits received federal financial assistance is a necessary element of the prima facie case for a violation of section 504. *See Schroeder,* 715 F.Supp. at 225–26 (dismissing claim under Rehabilitation Act because complaint only alleged that City received federal funding). The court will not infer from Winfrey's specific allegation that the City receives federal funds that the Department of Streets and Sanitation also receives direct federal assistance.

Because Winfrey has failed to allege a necessary element of a prima facie case under section 504, the City's motion to dismiss Count II is granted. However, the court will permit Winfrey to amend Count II of his complaint to replead, consistent with his obligations under Rule 11, Federal Rules of Civil Procedure 11, his claim under the Rehabilitation Act. If Winfrey in fact has a good faith basis to allege that a specific department or agency that operated Winfrey's employment program received federal financial assistance, he may amend his complaint within fourteen days of this order to state this assertion. If, however, Winfrey is unable to so amend his complaint, the dismissal will be granted with prejudice.

### III. *Punitive Damages.*

■ The City also moves to strike Winfrey's claim for punitive damages under each Count. Although Title I of the ADA expressly provides for the award of punitive damages in certain circumstances, it also explicitly exempts municipalities from such awards. 42 U.S.C. § 1981a(b)(1). In contrast, Title II does not provide for punitive damages, at all. This conspicuous silence indicates Congress' intent to not provide such damages for violations of Title II. *See Harrelson v. Elmore County,* 859 F.Supp. 1465, 1468–69 (M.D.Ala.1994) (*citing United States v. Martino,* 681 F.2d 952, 954 (5th Cir.1982) (en banc), *aff'd,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983)). Title II applies to programs run by public entities. Therefore, this interpretation of the remedies provided under Title II is consistent with Title I's express exemption of government entities from such awards. Consequently,

the court grants the City's motion to strike Winfrey's claims for punitive damages.

The court also notes that, if it had not dismissed Count II, Winfrey's punitive claims under his Rehabilitation Act claim would also be stricken. The Rehabilitation Act is also silent with regard to punitive damages. In light of this silence, the court finds that punitive damages are also not available for claims under section 504 of the Rehabilitation Act. *See Cortes v. Board of Governors,* 766 F.Supp. 623, 626 (N.D.Ill. 1991) (finding that Rehabilitation Act does not provide for punitive damages).

## CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss is granted in part and denied in part. Defendant's motion to dismiss is granted with respect to Count II, subject to the plaintiff amending his complaint within fourteen days to comply with this order. In addition, the defendant's motion to dismiss is granted with respect to plaintiff's claims for punitive damages. However, defendant's motion to dismiss plaintiff's claims under Count I is denied.